**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Glenn Randal FOPPE, Defendant–Appellant.**

**No. 91–50606.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Nov. 4, 1992.

Decided May 25, 1993.

Carlton F. Gunn, Deputy Federal Public Defender, Los Angeles, CA, for defendant-appellant.

Stephen G. Larson, Asst. U.S. Atty., Los Angeles, CA, for plaintiff-appellee.

Before: WALLACE, Chief Judge, TROTT and T.G. NELSON, Circuit Judges.

WALLACE, Chief Judge:

Foppe appeals from his conviction for committing an unarmed bank robbery in violation of 18 U.S.C. § 2113(a) and his sentence under the United States Sentencing Guidelines (Guidelines). The district court had jurisdiction pursuant to 18 U.S.C. § 3231. We have jurisdiction over this timely appeal pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742. We affirm.

I

On April 2, 1991, a man ran into a Western Federal Savings Bank (bank) in downtown Los Angeles. He confronted Ardath Simons, an elderly female customer who was seated at the customer service desk, and grabbed her around the neck. He shoved a hard

object that felt like a gun into her back, and demanded money.

The robber demanded Simons stand up, and when she responded that she could not, he kicked the chair out from underneath her and dragged her by the neck toward a gate that led to the teller station. The robber kicked the gate open, let go of Simons, and grabbed Julia Amaya, a customer service representative who had been helping Simons when the man entered the bank. At this point, Simons realized that the hard object that had been pressed into her back was only a hairbrush. She grabbed the hairbrush, yelled, "It's not a gun, its a hairbrush," and ran out of the bank.

Three tellers hid behind a counter. The robber approached the teller window belonging to Patricia Del Rosario, and yelled at her to come back and give him all of her money. When Del Rosario did not do so, the robber took $3,090 in cash from her station and ran out of the bank.

The next day, two Los Angeles Police Officers stopped a car driven by Foppe after it made an unsafe lane change. Although he later admitted that he had no reason to believe that Foppe was armed or dangerous, one of the officers conducted a patdown search. He discovered a large wad of cash stained with red dye in Foppe's back pants pocket. The officer concluded that the money must have come from a bank robbery, handcuffed Foppe, and summoned other officers to the scene.

After the other officers arrived, Foppe made a spontaneous statement that he had robbed a bank the day before, using a hairbrush to simulate a weapon. The officers took Foppe to the police station. Several hours later, Special Agent Flanigan of the Federal Bureau of Investigation arrived to interview Foppe. After waiving his *Miranda* rights, Foppe admitted that he had robbed the bank the day before.

At some point during the interview, Flanigan took a photograph of Foppe and constructed a photospread using five photographs of other individuals of similar appearance. Flanigan showed the photospread to Del Rosario and Fadia Marini, another teller from the bank. Both identified Foppe as the robber.

Foppe made a pretrial motion to suppress all evidence, contending that the frisk conducted after the traffic stop and his subsequent arrest violated his rights under the Fourth Amendment. The government conceded that the frisk was an illegal search, but disputed whether all of the evidence subsequently obtained must be suppressed. Following a hearing, the district court found that the patdown search was unlawful and suppressed all evidence derived from the frisk, including Foppe's confessions and the photospread identifications. The district court concluded, however, that any in-court identification of Foppe by the two teller-eyewitnesses would be independent of their prior photospread identifications.

On July 3, 1991, a jury found Foppe guilty of one count of unarmed bank robbery. Thereafter, the district court sentenced Foppe to 105 months in custody, followed by three years of supervised release.

## II

Flanigan testified over objection that Foppe had a "Fu Manchu mustache" when he was arrested and that he had grown a full beard since that time. He also testified about similarities between Foppe's appearance at the time of his arrest and the appearance of the robber in the surveillance photographs taken at the bank. During its closing argument, the government asserted that Foppe's change in appearance by growing a full beard demonstrated a consciousness of guilt. Foppe contends that the district court erred in admitting this evidence and permitting the argument.

### A.

■ Foppe argues that Flanigan's observations of him on the day of his arrest were the fruit of his illegal patdown search and subsequent arrest and should have been suppressed. The district court's findings of fact relating to suppression of evidence are reviewed for clear error. *United States v. Attson,* 900 F.2d 1427, 1429 (9th Cir.) (*Attson*), *cert. denied,* 498 U.S. 961, 111 S.Ct. 393, 112 L.Ed.2d 403 (1990). The scope of the application of the Fourth Amendment is reviewed de novo. *Id.*

In addition to evidence obtained directly through the violation of the Fourth Amendment, the "fruit" of such illegal conduct must also be excluded from trial. *See Wong Sun v. United States,* 371 U.S. 471, 487–88, 83 S.Ct. 407, 417–18, 9 L.Ed.2d 441 (1963) (*Wong Sun*). The Supreme Court has rejected a "but for" test for determining whether evidence is a fruit of unlawful police activity. *See id.* Rather, the appropriate question is "whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint." *Id.* at 488, 83 S.Ct. at 417 (internal quotation omitted).

We must decide, therefore, whether Flanigan was "exploiting" the illegal search and arrest when he observed Foppe on the day of his arrest. Although there must be some "causal connection between the illegality and the evidence," *United States v. Chamberlin,* 644 F.2d 1262, 1269 (9th Cir.1980) (*Chamberlin*), *cert. denied,* 453 U.S. 914, 101 S.Ct. 3148, 69 L.Ed.2d 997 (1981), that alone is not enough to require suppression. We must ask further "whether the illegal activity tends to significantly direct the investigation to the evidence in question." *Id.*

We hold that the observations of Foppe's appearance made by Flanigan cannot be characterized as the "fruit of the poisonous tree." Granted, Flanigan would never have had the opportunity to observe Foppe's appearance had it not been for the illegal search and arrest. As stated above, however, "but for" causation alone does not warrant suppression. The evidence obtained during the illegal frisk—the ink-stained money—prompted the police to pursue additional evidence against Foppe. To this end, Flanigan interrogated Foppe and constructed a photospread with Foppe's photograph. The confessions and photospread identifications that resulted were clearly fruits: the police exploited the unlawful frisk of Foppe to obtain incriminating evidence against him. In contrast, the unlawful frisk did not "significantly direct" Flanigan's investigation to his observations of Foppe's facial hair. Flanigan's observations of Foppe were merely incidental to the police efforts to make a criminal case against Foppe. As he was conducting his investigation, he could not help but notice the appearance of the man who sat before him. In and of themselves, his observations had no independent evidentiary value for the government. Nor did they advance the investigation of the robbery in any way. Indeed, Flanigan's observations only became relevant after Foppe allowed his beard to grow before trial; they were neither an objective of nor a factor in the ongoing investigation.

The "fruit of the poisonous tree" doctrine effectuates the policy behind the exclusionary rule. *See Dunaway v. New York,* 442 U.S. 200, 217–18, 99 S.Ct. 2248, 2259, 60 L.Ed.2d 824 (1979). The policy would not be advanced by exclusion in this case. Because incidental observations which police have in mind when detaining a suspect are not objective, suppression of such observations will have no deterrent effect on unlawful police activity. The exclusionary rule imposes large social costs and should not be applied where, as here, it would serve its remedial objectives weakly, if at all.

*Chamberlin,* relied on by Foppe, is not to the contrary. In that case, a police officer stopped Chamberlin after his companion had run away upon seeing the officer's police car approach. *See* 644 F.2d at 1264. After Chamberlin refused to acknowledge that he knew the identity of the man who had fled, the officer placed Chamberlin in the back of his police car. *See id.* at 1267. Subsequently, the officer observed Chamberlin's nervous demeanor. *See id.* Based on this and other information, the officer conducted further investigation and acquired additional evidence against Chamberlin. *See id.* at 1267–68.

We ordered the officer's observations of Chamberlin's nervous demeanor suppressed as a fruit of an illegal seizure. *See id.* at 1268. We explained that "[i]t is apparent that the opportunity to observe [Chamberlin's] demeanor was brought about only because of his illegal detention, and thus must be excluded as an exploitation of his illegal arrest." *Id.* A nervous demeanor, however, cannot be equated with mere appearance. Unlike the extent of a suspect's facial hair, a sweaty brow or a furtive glance may be

incriminating in and of itself. Suppressing demeanor evidence thus serves to effectuate the deterrent goal behind the exclusionary rule. Furthermore, Chamberlin's nervous demeanor, along with other evidence, "added considerable impetus to the investigation, and tended significantly to direct the investigation to the furniture store." *Id.* at 1269. In contrast, Flanigan's observations played no role in the police investigation of either Foppe or the bank robbery. The district court therefore properly refused to suppress this evidence as a fruit.

### B.

 Foppe also argues that the admission of Flanigan's testimony regarding Foppe's facial hair was improper evidence of his consciousness of guilt. We review the district court's decision balancing the probative value of evidence against its prejudicial effect for abuse of discretion. *United States v. Kessi,* 868 F.2d 1097, 1107 (9th Cir.1989).

There was nothing extraordinary about Flanigan's description of Foppe's facial hair at the time of his arrest. Nor is it singular that the witness would compare it with his then full growth. Flanigan did not testify that the change demonstrated a consciousness of guilt. He testified only as to observed facts. Allowing this testimony cannot be an abuse of discretion.

 The issue of consciousness of guilt came up during the government's closing argument. Over Foppe's objection, the government told the jury that Foppe had grown a beard to disguise himself and to prevent the eyewitness and the jury from identifying him as the robber. The government did not request, nor did the court give, a jury instruction on consciousness of guilt. We review the district court's decision to permit the government's comments in argument to the jury for abuse of discretion. *United States v. Makhlouta,* 790 F.2d 1400, 1403 (9th Cir.1986).

 The government is, and should be, allowed great latitude in arguing its case to the jury. "But, while [the government] may strike hard blows, [it] is not at liberty to strike foul ones." *Berger v. United States,* 295 U.S. 78, 88, 55 S.Ct. 629, 633, 79 L.Ed. 1314 (1935). "The critical inquiry is whether,

in the circumstances of the trial as a whole, the remarks were so prejudicial that they likely influenced the jury adversely to the defendant and deprived the defendant of a fair trial." *United States v. Patel,* 762 F.2d 784, 795 (9th Cir.1985). There was sufficient evidence in the record from which the government could make its consciousness of guilt argument, and in the context of the trial as a whole the government's remarks were not unduly prejudicial. We therefore conclude that the district court did not abuse its discretion in overruling the objection.

### III

Soon after Foppe's arrest, Del Rosario identified him from the photospread constructed by Flanigan. The district court suppressed this evidence as the fruit of Foppe's illegal frisk. The district court denied Foppe's motion to suppress Del Rosario's in-court identification of Foppe, however, because it found that her testimony had not been "materially affected" by her viewing the photospread.

 There are three elements of in-court identification testimony: (1) the witness' presence at trial; (2) the ability of the witness to identify the defendant as the perpetrator of the crime; and (3) the presence of the defendant in the courtroom. *See United States v. Crews,* 445 U.S. 463, 471, 100 S.Ct. 1244, 1250, 63 L.Ed.2d 537 (1980) (*Crews*). Identification testimony must be suppressed if any of these elements " 'has been come at by exploitation' of the violation of the defendant's Fourth Amendment rights." *Id.,* quoting *Wong Sun,* 371 U.S. at 488, 83 S.Ct. at 417.

 Foppe contends that the district court erred in determining that Del Rosario's ability to identify Foppe as the robber was not a fruit of unlawful police conduct. "Under the Supreme Court's analysis in *Crews,* the question here is whether 'the witness' courtroom identification rested on an independent recollection ..., uninfluenced by the [tainted] pretrial identifications.' " *United States v. Humphries,* 636 F.2d 1172, 1181 (9th Cir.1980), *cert. denied,* 451 U.S. 988, 101 S.Ct. 2324, 68 L.Ed.2d 846 (1981), *quoting*

*Crews,* 445 U.S. at 473, 100 S.Ct. at 1251. We review the district court's resolution of this factual finding for clear error. *Attson,* 900 F.2d at 1429.

During the suppression hearing, Del Rosario testified that the lighting in the bank was good and that she was able to see the robber's face at close range. Although the observations lasted for a matter of seconds, she testified that she could identify the robber if she ever saw him again. The record provides ample support for the district court's finding that Del Rosario's capacity to identify Foppe in court rested on her independent recollection of Foppe, uninfluenced by the photospread. We conclude that the district court properly admitted her in-court identification.

## IV

■ Foppe requested an instruction that would have required the government to prove beyond a reasonable doubt that Foppe "intentionally and voluntarily used force or violence on, or intimidated, Patricia Del Rosario in order to take the money." The court instead gave the jury instruction proposed by the government which required the government to prove only that "[t]he taking was either by force and violence, or by intimidation." Foppe contends that he cannot be convicted under 18 U.S.C. § 2113(a) unless the government proves that he specifically intended to intimidate Del Rosario, the teller mentioned in the indictment. He argues that because he intentionally intimidated only Amaya, the customer service representative, and not Del Rosario, the district court's decision was prejudicial.

■ A claim of error as to whether jury instructions correctly explain the elements of the offense is reviewed de novo. *United States v. Terry,* 911 F.2d 272, 278–79 (9th Cir.1990). Jury instructions are considered as a whole to ensure that they are not misleading or inadequate. *Id.*

■ Unarmed bank robbery, as defined in section 2113(a), is a general intent crime, not a specific intent crime. *United States v. Burnim,* 576 F.2d 236, 237 (9th Cir.1978). The court should not instruct the jury on specific intent because the jury can infer the requisite criminal intent from the fact that the defendant took the property of another by force and violence, or intimidation. *See United States v. Porter,* 431 F.2d 7, 10 (9th Cir.), *cert. denied,* 400 U.S. 960, 91 S.Ct. 360, 27 L.Ed.2d 269 (1970). "The determination of whether there has been an intimidation should be guided by an objective test focusing on the accused's actions." *United States v. Alsop,* 479 F.2d 65, 67 n. 4 (9th Cir.1973). Whether Foppe specifically intended to intimidate Del Rosario is irrelevant. Because "[t]he government need only prove that the taking of money was by intimidation," *United States v. Nash,* 946 F.2d 679, 681 (9th Cir.1991), the jury instructions in this case adequately described the elements of the offense.

## V

Prior to closing argument, Foppe requested an instruction that the jury "may also take into account that an identification made by picking the defendant out of a group of similar individuals is generally more reliable than one which results from presentation of the defendant alone to the witness." The court did not specifically rule on this instruction, but stated it would give Foppe's instructions which were not objected to by the government and were not duplicates. Foppe's counsel read this language to the jury as part of his closing argument. The district court, however, did not give this instruction to the jury, and subsequently refused to do so.

■ Federal Rule of Criminal Procedure 30 provides that the district court must inform counsel whether it will give his proposed instructions to the jury prior to his closing arguments. "Failure to comply with Rule 30 is reversible error, however, only if counsel's closing argument was prejudicially affected thereby." *United States v. Gaskins,* 849 F.2d 454, 458 (9th Cir.1988) (*Gaskins*) (internal quotation omitted). A party suffers prejudice if it "was unfairly prevented from arguing his or her defense to the jury or was substantially misled in formulating and presenting arguments." *Id.*

■ We assume, as do the parties, that the district court violated Rule 30 by not

giving Foppe's proposed instruction. The parties dispute, however, whether the error requires reversal. Foppe argues that he was prejudiced because the omission of his proposed instruction after his counsel had advised the jury it would be given by the court undermined his counsel's credibility. He also argues that the instruction was directly relevant to his theory of defense.

"The object of [Rule 30] is to require the district court to inform the trial lawyers in a fair way what the instructions are going to be in order to allow counsel the opportunity to argue the case intelligently to the jury." *Id.* The prejudice inquiry thus focuses on "the effect which the court's misleading indications regarding the requested instructions had on the content of counsel's argument." *United States v. Harvill,* 501 F.2d 295, 297 (9th Cir.1974) (*Harvill*). Foppe does not argue that his counsel would have modified the substance of his closing argument had he known how the court was actually going to charge the jury. Nor did the actual jury instructions "contradict or repudiate the thrust of closing argument." *United States v. McCown,* 711 F.2d 1441, 1452 (9th Cir. 1983). We conclude that whatever loss of credibility Foppe's counsel may have suffered is not sufficient prejudice to merit reversal. *Cf. Gaskins,* 849 F.2d at 459–60 (prejudice where judge added aiding and abetting liability instruction after closing argument); *Harvill,* 501 F.2d at 297 (prejudice where judge said before closing argument that it would give specific intent instructions but later instructed jury that it could convict without a finding of specific intent).

The district court stated that it had never intended to give the disputed instruction because it did not relate to the case. The government did not introduce any line-up or photospread identifications and we therefore agree with the district court that the instruction was not relevant. Because Foppe was not entitled to an irrelevant jury instruction, the district court's decision not so to charge the jury did not prejudice him in any meaningful way. *Cf. United States v. Baker,* 722 F.2d 343, 347 (7th Cir.1983) (holding that defendant not unfairly prejudiced by trial judge's decision to correct erroneous instruction), *cert. denied,* 465 U.S. 1037, 104 S.Ct. 1312, 79 L.Ed.2d 709 (1984). In any event, the district court did give an instruction, also requested by Foppe, that called on the jury to scrutinize the in-court identifications. This instruction fully supported Foppe's theory of defense.

## VI

At sentencing, the district judge increased Foppe's offense level by two points for physical restraint pursuant to section 2B3.1(b)(4)(B) of the Guidelines. The district court also departed upward because Foppe physically restrained more than one victim during the course of the robbery in a manner and to an extent not contemplated by the Guidelines. Foppe challenges both decisions.

### A.

Section 2B3.1(b)(4)(B) provides for a two-level increase "if any person was physically restrained to facilitate commission of the offense." Section 1B1.1, to which application note 1 of section 2B3.1 refers, provides that "'[p]hysically restrained' means the forcible restraint of the victim *such as* by being tied, bound, or locked up." U.S.S.G. § 1B1.1 application note 1(i) (emphasis added). The use of the phrase "such as" makes it clear that "being tied, bound, or locked up" are merely illustrative examples of physical restraint. *See, e.g., United States v. Doubet,* 969 F.2d 341, 346 (7th Cir.1992).

Foppe argues the examples offered by the Guidelines—"being tied, bound, or locked up"—suggest that section 2B3.1(b)(4)(B) should apply only to "long-term restraint" and not the short-term assault practiced by the robber in this case. We review de novo the district court's interpretation of the Guidelines, and its factual determinations for clear error. *United States v. Sanchez,* 967 F.2d 1383, 1384 (9th Cir.1992).

The Guidelines do not distinguish between long and short-term restraint, and neither will we. The dictionary defines "restraint" as (1) the act of holding back from some activity or (2) by means of force, an act that checks free activity or otherwise controls. *See Webster's Third New International Dictionary* 1937 (1986). "Forcible" means ef-

fected by the use of force. *See id.* at 888. Under these definitions, Foppe's actions constituted forcible restraint. Because Foppe facilitated the robbery by forcibly restraining two women, the district court properly added two levels to his base sentence.

### B.

■ In *United States v. Lira–Barraza,* 941 F.2d 745 (9th Cir.1991) (en banc), we outlined how we would review decisions to depart from the Guidelines: we review de novo the legal authority of the district judge to depart, *see id.* at 746; we review the district court's underlying factual findings for clear error, *see id.* at 746–47; and we determine whether the extent of departure was "unreasonable," *see id.* at 747.

■ As we held in *Lira–Barraza,* a "district court may not depart from the applicable Guideline range unless it identifies an aggravating circumstance of a kind or to a degree the [Sentencing] Commission did not adequately take into account when formulating the Guidelines." *Id.* at 746. Section 2B3.1(b)(4)(B) provides for a two-level increase if "any person" was physically restrained. This language suggests that the Guidelines do not take into account circumstances where, as here, Foppe physically restrained more than one person in a violent manner but where no bodily injury occurred. We therefore hold that the district court had the authority to depart upward. We also conclude that the district court's decision to depart stood on a firm factual footing and that the extent of the departure—nine months beyond the high end of the applicable Guidelines range—was not unreasonable in light of the circumstances of this case.

AFFIRMED.