UNITED STATES of America, Plaintiff–Appellee,

v.

Demetrius Carlos THOMPSON, Defendant–Appellant.

No. 96–10049.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted March 11, 1997.

Decided March 31, 1997.

George C. Boisseau, Santa Rosa, California, for defendant-appellant.

Nandor J. Vadas, Assistant United States Attorney, San Francisco, California, for plaintiff-appellee.

Before: CHOY, BRUNETTI, and FERNANDEZ, Circuit Judges.

FERNANDEZ, Circuit Judge:

Demetrius Carlos Thompson appeals his sentence for armed bank robbery committed in violation of 18 U.S.C. § 2113(a), (d).[1] He asserts that the district court erred when it adjusted his offense level upward by two levels for physical restraint of a victim. *See* USSG § 2B3.1(b)(4)(B).[2] We affirm.

## BACKGROUND

On August 19, 1994, three men, Thompson, David Michael Athey, and John Doe,[3] robbed the Bank of the West branch in Petaluma, California, while a confederate, White, waited in the getaway vehicle. Thompson and Doe were armed, but Athey was not. Upon entry into the bank, one of the armed men jabbed his gun into the back of an exiting customer, Charles Rait, pushed him back inside, and then held him down by placing a foot upon his back and neck. Shortly thereafter, one of the two armed men went into the vault area of the bank and demanded vault keys from the bank's customer service manager, Barbara Claassen. He then repeatedly forced Claassen to get down on the floor of the vault and back up again, while threatening to kill her. At about the same time the other armed man approached branch manager, Priscilla Morissy, and pointed his gun at her. He then forced Morissy to walk, at gunpoint, along the teller line from her previous location to the vault area. While forcing Morissy to walk to the vault area, the gunman yelled various profanities at Morissy, who believed that he would kill her. Between them, Thompson and Doe committed those three acts; however, which one committed which act never became clear at trial. It is certain, however, that one person could not have held both Claassen and Morissy at gunpoint simultaneously. Thus, Thompson committed at least one of those two acts.

## STANDARD OF REVIEW

"We review de novo the district court's interpretation of the Guidelines, and its factual determinations for clear error." *United States v. Foppe*, 993 F.2d 1444, 1452 (9th Cir.1993).

## DISCUSSION

At sentencing, the district court adjusted Thompson's sentence upward on the basis of the acts committed by the robbers. The court noted that those were reasonably foreseeable acts committed in furtherance of the conspiracy to rob the bank, for which Thompson's sentence could be enhanced. *See* USSG § 1B1.3(a)(1)(B); *United States v. Shaw*, 91 F.3d 86, 88–89 (9th Cir.1996). Thus, it did not matter whether Thompson committed those acts himself because his sentence could be enhanced even if Doe was the one who restrained the victims. *See United States v. Washington*, 106 F.3d 1488, 1489, 1489–90 (9th Cir. 1997). We do not reach the question of whether the district court properly enhanced Thompson's sentence on a co-conspirator theory of liability. Thompson's own conduct in restraining either Claassen or Morissy justified a two-level upward adjustment.

1. We address Thompson's sentencing claim in this opinion. Thompson and his co-defendant, Ricardo Angelo White, raise several other issues, which we address in an unpublished memorandum disposition filed this date.

2. All references are to the Nov. 1, 1995 version of the Sentencing Guidelines.

3. This name is fictitious. While there were three robbers, the person charged as the third one was found not guilty.

It is certain from the trial record that Thompson necessarily held one of those two bank employees at gunpoint and restrained her rights of movement in some way. He either repeatedly forced Claassen to get down on the floor and get up again at gunpoint, or he forced Morissy to walk from the teller area to the vault area at gunpoint.[4] In either case, he profanely threatened to kill his victim. For the reasons explained below, we decide that either one of those acts, standing alone, amounted to physical restraint of a victim.

The Guidelines provide for a two-level upward adjustment of the offense level, "if any person was physically restrained to facilitate commission of the offense or to facilitate escape." USSG § 2B3.1(b)(4)(B). Examples of conduct constituting physical restraint are also provided: "'Physically restrained' means the forcible restraint of the victim such as by being tied, bound, or locked up." *Id.* § 1B1.1, comment. (n.1(i)). However, those examples are merely illustrative, and other conduct may constitute physical restraint. *See Foppe*, 993 F.2d at 1452.

In *Foppe*, we found that the defendant had physically restrained his victims when, after holding up a bank by making it appear as though he was carrying a weapon (in fact it was a hairbrush), he dragged one person by the neck for some distance and subsequently grabbed another person. *Id.* at 1448. Just as Foppe, Thompson forcibly and substantially restrained his victim, regardless of whether that victim was Claassen or Morissy. At gunpoint, Claassen was repeatedly forced to lie on the floor and then stand up again. Morissy was forced, also at gunpoint, to walk some distance. Only two significant facts distinguish Thompson's conduct from Foppe's: Thompson made *no physical contact* with his victim; and Thompson used an actual weapon. Of course, the second fact indicates only that Thompson had a greater coercive power over his victim, and therefore may have had a greater ability to restrain her.

The lack of actual physical contact presents a more serious issue. We have never held that the absence of contact precludes a finding of physical restraint for purposes of the Guidelines.[5] Indeed, such a holding would run against the apparent concerns reflected in the Guidelines. As we noted in *Foppe*, "restraint" is commonly defined as "(1) the act of holding back from some activity or (2) by means of force, an act that checks free activity or otherwise controls." *Id.* at 1452. The difficulty is with the word "physical." Anything that happens in the concrete world can be said to be physical. Moreover, the application note unhelpfully states that "physical restraint" means "forcible restraint." Yet, as we have said, restraint itself includes the use of force. Thus, the application note would appear to refer to the forcible use of force, which redundancy does not advance matters much. We must still decide whether force was used.

When a weapon is pointed at a person and that person is ordered to do something, it is natural to say that the person has been forced, that is, that his activity has been controlled by force. We recognize that it could be argued that all that has then been used is the threat of force, whereas use of force requires actual touching. We, however, hold that no actual touching is required, and one of the examples in the application note-"locked up"-indicates that we are correct. Indeed, locking up could even be accomplished without the victim's seeing his assailant. When a dangerous weapon is used to force a person to move about, that person has been physically restrained just as surely as if he was grabbed by the collar and pulled along. In fact, he may be even more restrained. If a miscreant lays hands on his victim, the victim has a fair chance of breaking loose and ending the restraint entirely. A victim looking down the barrel of a gun has much less of an opportunity. Thus, regardless of whether his victim was Claassen or Morissy, Thompson certainly checked her

---

**4.** Of course, he may also have been the one who grabbed and manhandled the customer, Rait. However, that is not shown by this record.

**5.** Thompson points to *United States v. Farrier*, 948 F.2d 1125, 1127 (9th Cir.1991), but it is not helpful because in that decision we found no restraint based on the record before us, but did not describe the record.

free activity and otherwise controlled her actions. In short, he physically restrained her.

Other circuits have reached the same result on similar facts. In *United States v. Jones,* the Eleventh Circuit affirmed an upward adjustment for physical restraint when the robbers forced persons in a credit union into the safe room and forced them to lie face down on the floor. 32 F.3d 1512, 1518–19 (11th Cir.1994) (per curiam). As the court said,

> Jones and his accomplices restricted their victims' mobility and capacity to observe events to facilitate the robbery. Although no threats were made, the obvious presence of handguns ensured the victims' compliance and effectively prevented them from leaving the room for a brief period while the robbers fled the scene.

*Id.* at 1519. In *United States v. Schau,* the Eighth Circuit affirmed an upward adjustment where the defendants, while carrying firearms, ordered their victims into a bank vault and wedged a chair against the against the vault door when it would not lock. 1 F.3d 729, 730 (8th Cir.1993) (per curiam). As the court said, "Even though the vault door was not locked and the victims were able to free themselves easily, the victims were forced to comply. Thus, we conclude the district court properly increased the defendants' base offense levels." *Id.; see United States v. Robinson,* 20 F.3d 270, 279 (7th Cir.1994) (spraying of mace effected physical restraint because it prevented the victim from chasing after the robber and impeded the victim's movement for some time); *United States v. Doubet,* 969 F.2d 341, 347 (7th Cir.1992) (defendant who herded victims into a room in the back of a bank while pointing a sawed-off shotgun at them and yelling death threats physically restrained them). The other circuits have not limited "physical restraint" to the examples listed in the Guidelines or required an actual touching of the victim by the defendant. Neither will we.[6]

---

[6]. *United States v. Bogan,* 788 F.Supp. 433, 435 (N.D.Cal.1992), *vacated on other grounds, United States v. Robinson,* 20 F.3d 1030 (9th Cir.1994),

## CONCLUSION

Thompson, who was part of a violent takeover of a bank, now argues that he did not physically restrain his victim even though restraint was clearly his very purpose when he harshly and vulgarly ordered her about at gunpoint. Only an inundation of naivete and credulity would lead to an acceptance of that argument. The more natural and realistic interpretation of § 2B3.1(b)(4)(B) leads to the conclusion that the forced movement and holding of his victim at gunpoint amounted to physical restraint of her. That earned Thompson the two-level increase awarded to him by the district court.

**AFFIRMED.**

is overruled to the extent that it conflicts with our decision today.