

1999 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

7-29-1999

# USA v. Copenhaver

Precedential or Non-Precedential:

Docket 98-1305,98-1306

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1999

Recommended Citation

"USA v. Copenhaver" (1999). *1999 Decisions.* Paper 218.
http://digitalcommons.law.villanova.edu/thirdcircuit_1999/218

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1999 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed July 29, 1999

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

Nos. 98-1305 and 98-1306

UNITED STATES OF AMERICA

v.

BRIAN COPENHAVER,
        Appellant

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Nos. 97-cr-00555-1, 97-cr-00556-1)
District Judge: Hon. Eduardo C. Robreno

Submitted Under Third Circuit LAR 34.1(a)
July 26, 1999

Before: SLOVITER, NYGAARD and McKEE,
Circuit Judges

(Filed: July 29, 1999)

        James J. Eisenhower, III
        Montgomery, McCracken, Walker
         & Rhoads
        Philadelphia, PA 19109

         Attorney for Appellant

        Emily McKillip
        Office of U.S. Attorney
        Philadelphia, PA 19106

         Attorney for Appellee

OPINION OF THE COURT

SLOVITER, Circuit Judge.

Brian Copenhaver, who was convicted of violating 18
U.S.C. S 1951 (interference with commerce by robbery) and
18 U.S.C. S 2113(d) (armed bank robbery), appeals from the
judgment of conviction and sentence, limiting his appeal to
the District Court's imposition of the two-point offense level
enhancement for physical restraint of the victim. Although
this issue has been considered by other courts of appeals,
it is one of first impression in this circuit.

I.

FACTS AND PROCEDURAL HISTORY

On April 13, 1997, at approximately 2:00 a.m.,
Copenhaver and co-defendant James Keplinger robbed the
Historic Strasburg Inn in Strasburg, Pennsylvania. Night
auditor Thomas Helwig was in the inn lobby. Copenhaver
pointed what appeared to be an automatic pistol at Helwig
and stated, "your luck has just run out, faggot." App. at 41.
The weapon was actually a BB gun, but that fact is not
significant for our purposes. Copenhaver jumped over the
counter and struck Helwig on the head with the pistol,
which caused a laceration on the top of Helwig's scalp.
Copenhaver told Helwig to go into the adjoining office area
and kneel down by the photocopy machine. Copenhaver
then tried to open the cash register but after he was unable
to do so, he and Keplinger forced Helwig to open the cash
register. The robbers obtained $435 from the cash register
and another $150 from a money bag behind the Inn's bar.
They then forced Helwig into another office, and, according
to the presentence investigation report which provides the
only basis for the relevant factual record, "put him in the
fireplace and placed the fire screen across it." During the
course of the robbery, Copenhaver repeatedly threatened
Helwig, using terms such as "I want to waste you, faggot,"
and "I'm going to waste you faggot." App. at 42. Helwig

2

remained in the fireplace for fifteen to thirty minutes after the robbers left and then called the police.

Less than a month later, on May 9, 1997, Copenhaver, Keplinger, and another man drove in a stolen vehicle to the Farmers' First Bank, a federally-insured financial institution located in Peach Bottom, Pennsylvania. Copenhaver, dressed in a costume intended to resemble the clothing worn by Amish men, entered the bank carrying what appeared to the bank employees to be a semiautomatic pistol but which was actually his BB gun. Copenhaver instructed those present to put their hands up and told the tellers to give him all the money. As Copenhaver was leaving the bank, he dropped some of the money on the floor of the bank. Copenhaver left with a total of $8,817 in cash.

Copenhaver was indicted by a federal grand jury on four counts arising from the robbery of the Farmers' First Bank: conspiracy to commit armed bank robbery in violation of 18 U.S.C. S 371, armed bank robbery in violation of 18 U.S.C. S 2113(d), possession of a stolen vehicle that had crossed state lines after being stolen in violation of 18 U.S.C. S 2313, and aiding and abetting in violation of 18 U.S.C. S 2. On the same day, the grand jury returned another indictment charging Copenhaver with interference with commerce by robbery in violation of 18 U.S.C. S 1951, arising from the robbery of the Historic Strasburg Inn. The two prosecutions were consolidated for plea and sentencing.

Pursuant to a plea agreement with the government, Copenhaver pled guilty to one count of interference with interstate commerce by robbery and one count of armed bank robbery. In exchange for those pleas of guilty, the government sought and obtained dismissal of the conspiracy and possession of stolen vehicle charges. In their negotiations with respect to the applicable sentencing guidelines, Copenhaver and the government disagreed on the applicability of the two-level enhancement for "physical restraint" provided in U.S.S.G. S 2B3.1(b)(4)(B) in connection with the robbery of the Historic Strasburg Inn. The Probation Officer issued a revised presentence report that recommended such enhancement.

3

The District Court held a sentencing hearing at which the principal contested issue was whether Copenhaver had "physically restrained" a victim within the meaning of the Sentencing Guidelines during the robbery of the Historic Strasburg Inn. After discussing various cases from other circuits the District Court stated:

> So while the Third Circuit has not squarely addressed the two-point enhancement, there is ample authority and all going in one direction which would hold that the enhancement is appropriate in this case, where the defendant and his co-defendant . . . were armed with a BB gun and that it appeared to be a semiautomatic pistol when they robbed the inn and where the victim was struck with a gun, was forced to his knees, made to crouch in the fireplace and then placed thefireplace screen -- and where the fireplace screen was placed across the opening.
>
> These actions clearly qualify as a physical restraint of the victim and for that reason, the enhancement is appropriate.

App. at 111-12.

The District Court therefore applied the two-level enhancement for "physical restraint" of the victim. This resulted in an adjusted offense level of 27 which, when combined with Copenhaver's criminal history, led to a guidelines range of 120 to 150 months imprisonment. The District Court sentenced Copenhaver to 120 months imprisonment, five years of supervised release, and a special assessment of $200. Copenhaver timely appealed the sentence.

II.

DISCUSSION

The sole issue on appeal is whether Copenhaver's actions during the Historic Strasburg Inn robbery constitute "physical restraint" within the meaning of the Sentencing Guidelines. We have not addressed this issue. We therefore review the decisions of other courts of appeals that have

4

considered the scope of "physical restraint" in analogous situations.

Section 2B3.1(b)(4)(B) of the Sentencing Guidelines provides for a two-level increase "if any person was physically restrained to facilitate commission of the offense." Section 1B1.1, to which application note 1 of section 2B3.1 refers, provides that "physically restrained means the forcible restraint of the victim such as by being tied, bound or locked up."

Cases have generally held that "[p]hysical restraint" is not limited to the examples listed in the guidelines. As one court explained, "[t]he use of the modifier`such as' in the definition indicates that the illustration of the`physical restraint' are listed by way of example rather than limitation." United States v. Jones, 32 F.3d 1512, 1518 (11th Cir. 1994) (internal quotation marks omitted); see also United States v. Rosario, 7 F.3d 319, 320-21 (2nd Cir. 1993); United States v. Doubet, 969 F.2d 341, 346 (7th Cir. 1992); United States v. Stokely, 881 F.2d 114, 116 (4th Cir. 1989).

Enhancement for "physical restraint" has been held applicable when the defendant "creates circumstances allowing the persons no alternative but compliance." United States v. Kirtley, 986 F.2d 285, 286 (8th Cir. 1993); see also United States v. Thompson, 109 F.3d 639, 641 (9th Cir. 1997); Jones, 32 F.2d at 1519; Doubet, 969 F.2d at 347. A defendant "physically restrains" his victims if he uses force to impede others from interfering with the commission of the offense. See United States v. Fisher, 132 F.3d 1327, 1329 (10th Cir. 1997); Rosario, 7 F.3d at 321; Doubet, 969 F.2d at 347.

The Doubet case provides a close factual parallel to the case at bar. In Doubet, the defendant herded victims into an unlocked restroom in the back of a bank while pointing a sawed off shotgun at them, yelling death threats, and admonishing that an armed accomplice stood guard (although there was no actual accomplice). 969 F.2d at 347. The district court applied the physical restraint enhancement, and the Court of Appeals for the Seventh Circuit affirmed, noting that the purpose of the

5

enhancement is to punish criminals who use physical restraint to "facilitate the commission of the offense." Id. at 346. The court opined that "force" is not limited to physical force and may encompass other circumstances that permit no alternative to compliance. Id. at 347. Although the court mentioned that herding victims into a defined area does not necessarily constitute "physical restraint," it nevertheless held that the victims in that case were for all intents and purposes confined to the restroom, albeit unlocked, because the "illusory accomplice," along with the defendant's actions, "served as a figurative lock and key sufficient to constitute a physical restraint which facilitated the commission of the offense." Id.

In Kirtley, the Court of Appeals for the Eighth Circuit held that a defendant who entered a bank displaying a gun and ordered the tellers to bind themselves with materials he provided had physically restrained them. 986 F.2d at 285. The court rejected the contention that the tellers were not physically restrained because they were able to free themselves after the defendant left the bank. Id. at 285.

The majority of jurisdictions that have addressed this issue have employed similar reasoning. For example, in Jones the court held "physical restraint" was present when armed robbers, in order to facilitate the robbery, forced persons in a credit union into the safe room and ordered them to lie face down, thereby restricting the victims' mobility and capacity to observe events. 32 F.3d at 1512, 1519. Similarly, in United States v. Schau, 1 F.3d 729, 730 (8th Cir. 1993), the court held that armed defendants who ordered their victims into a bank vault had restrained their victims for purposes of U.S.S.G. S 2B3.1(b)(4)(B), even though the defendants were unable to lock the vault's door. Presented with somewhat different facts, the court in United States v. Foppe, 993 F.2d 1444, 1452 (9th Cir. 1993), held that a defendant who pointed a weapon (later found to be a hairbrush) and who ordered his victims to move about had physically restrained them. See also Fisher, 132 F.3d at 1327 (physical restraint occurred when one defendant "kept the security guard at bay by pointing gun at his head while two others looted the teller counter"); Robinson, 20 F.3d 270, 279 (spraying of mace effected physical restraint

6

because it impeded the victim's movement and prevented the victim from chasing after the robber); Rosario, 7 F.3d 319, 320-321 (enhancement applied to a defendant who stood on victim's neck to facilitate robbery).

Copenhaver argues that the two-level enhancement is not applicable because the Guidelines' definition of "physically restrained" requires an exertion of physical force upon the victim. He relies on United States v. Anglin, 169 F.3d 154 (2nd Cir. 1999), a recent opinion of the Court of Appeals for the Second Circuit, decided after the District Court issued its ruling on this issue. In Anglin, the defendant bank robber brandished a gun and ordered the bank tellers to get down on the floor and not to move. The appellate court held that "displaying a gun and telling people to get down and not move, without more, is insufficient to trigger the `physical restraint' enhancement." Id. at 164. The court stated that "[s]uch conduct is materially different from the Guidelines examples, each of which involves a restraint of movement by use of some artifact by which the victim is `tied' or `bound' . . . or by the use of a space where the victim is `locked up,' as in the cited cases from other circuits." Id. The court also stated that the Application Note examples, although not imposing limitations upon the phrase "physical restraint", are intended as meaningful signposts on the way to understanding the Sentencing Commission's enhancement purpose. Id.

In this respect, the Anglin court differed from the decision of the Court of Appeals for the Ninth Circuit in Thompson, which held that a defendant who had ordered his victim to move about in a certain direction had physically restrained the victim. See 109 F.3d at 641. The Thompson court stated, "[w]hen a dangerous weapon is used to force a person to move about, that person has been physically restrained just as surely as if he was grabbed by the collar and pulled along. In fact, he may be even more restrained." Id. at 641.

Copenhaver not unexpectedly sides with Anglin. He argues that his actions directing Helwig to stand in the fireplace are not within the scope of the physical restraint enhancement because the victim was not "tied," "bound," or "locked up" but was merely placed behind an easily

7

moveable and see-through fireplace screen. He argues that although Helwig remained in the fireplace forfifteen to thirty minutes after he and his confederate left, Helwig did so solely based on fear.

We need not choose in this case between the position of Thompson that forcing some action at the point of a gun constitutes physical restraint under the Guideline and that in Anglin holding to the contrary. Here, Copenhaver did more than merely order Helwig to stand still, kneel or lie down. He not only forced him into another office but put him into the fireplace and placed the fire screen across it, thereby confining his victim in a manner comparable to the example given in Anglin of "lock[ing] up" the victim.

Copenhaver, noting that the presentence report does not actually state that he made Helwig move at gunpoint from one location of the Inn to another or that he uttered any threats at the time when he ordered Helwig into the fireplace, argues there was no basis to find the required physical restraint. We are not persuaded. No actual touching is required to effect physical restraint. See, e.g., Thompson, 109 F.3d at 641(noting that the example "locked up" in the application note supports the notion that no touching is required); Doubet, 969 F.2d at 347 (" `Force' is not limited to physical force, but may also encompass the operation of circumstances that permit no alternative to compliance." (internal quotation marks omitted)).

Whether or not Copenhaver threatened Helwig at the moment he "forced" him into the other office, he had previously displayed a gun and repeatedly uttered phrases such as "I want to waste you faggot." The use of the unchallenged word "forced" in the presentence report connotes physical restraint. Most significantly, Copenhaver placed a screen in front of the fireplace. There was no reason to do so other than to signify his intention to impede Helwig from intervening with the commission of the crime and deter his prompt call for help. For all intents and purposes, Helwig was confined to the fireplace and had no alternative but compliance.

The size of the fireplace, the opacity of the screen, and the weight of the screen – all matters that are not of record

8

– are not dispositive. Although it is of record that the screen was easily removable, the fact that a barrier was not impenetrable does not negate physical restraint. In Doubet, the restroom in which the victims were placed was unlocked, see Doubet, 969 F.2d at 346, in Jones the saferoom of the credit union where the employees and customers were told to lie down was unlocked, 32 F.3d at 519, and in Kirtley, even though the tellers' feet were tied, the tellers were easily able to unfasten their bonds. It is the perpetrator's act of enclosing or confining the victim in a space or with a barrier, actual or threatened, that constitutes the action meriting enhancement of the offense level. There was ample basis for the District Court to find that occurred in this case. Therefore, Copenhaver "physically restrained" his victim, and the enhancement was warranted.

III.

CONCLUSION

For the foregoing reasons, we will affirm the judgment of sentence, which includes the two-level enhancement for "physical restraint" of the victim.

A True Copy:
Teste:

Clerk of the United States Court of Appeals
for the Third Circuit

9