PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No: 17-3792

_____

UNITED STATES OF AMERICA

v.

MARQUISE BELL,
                    Appellant
_____

APPEAL FROM THE UNITED STATES
DISTRICT COURT FOR THE EASTERN
DISTRICT OF PENNSYLVANIA
(D.C. Crim. Nos. 2-16-cr-00441-001 & 2-17-cr-00087-001)
District Judge: Honorable Eduardo C. Robreno
_____

Argued September 25, 2018
_____

Before: AMBRO, CHAGARES, and GREENAWAY, JR.,
*Circuit Judges*.

(Opinion Filed:  January 7, 2020)

_____

OPINION

_____


George H. Newman [ARGUED]
George H. Newman & Associates
100 South Broad Street
Suite 2126
Philadelphia, PA 19110

    *Attorney for Appellant*

William M. McSwain, United States Attorney
Robert A. Zauzmer, Chief of Appeals
Bernadette A. McKeon [ARGUED]
Yvonne O. Osirim
Office of the United States Attorney
615 Chestnut Street
Suite 1250
Philadelphia, PA 19106

    *Attorneys for Appellee*


GREENAWAY, JR., *Circuit Judge*.

Marquise Bell challenges two enhancements to his sentence for robbing a Metro PCS store – one for the use of a dangerous weapon and the other for physically restraining the victim. For the reasons discussed below, we will affirm the

2

District Court's application of the enhancement for use of a dangerous weapon, reverse its application for physically restraining the victim, and remand for resentencing.

## I. Background

On September 15, 2015, Bell and Samuel Robinson entered a Metro PCS store located at 4229 North Broad Street, Philadelphia, Pennsylvania. Both men wore stockings over their faces to obscure their identities. Bell carried a weapon resembling a firearm. Upon entering the store, Bell physically confronted a store employee, by grabbing the employee's neck, pointing the weapon at his neck, and throwing the employee to the ground. Bell then began to remove cash from the register. The employee attempted to stop the theft by grabbing Bell's arm, causing Bell to strike the employee with the weapon. The blow caused a piece of the weapon to break off, at which time the employee realized the firearm was fake. The firearm Bell carried was, in reality, a plastic gun. The employee then stood up and attempted to stop the robbery. There was a struggle during which Bell pushed the employee away, allowing him and Robinson to flee the store with approximately $1,000.00 in cash.

During the sentencing hearing, Bell's counsel read a statement from the employee describing the incident:

> "I grabbed his arm. He hit me with the gun. That's when I knew it was fake. It was plastic. It broke and part of it fell over here (pointing to the floor) behind the register. That's when I saw the piece on the floor. I got up again, to fight him, but he grabbed the money from the register and ran out the door."

3

(App. A50-51.)

During his flight, Bell dropped his hat, which was seized by the Philadelphia Police and preserved for DNA testing. Approximately one year later, the police obtained a warrant for Bell's DNA. When FBI agents, Task Force officers, and Philadelphia Police Officers went to Bell's residence to execute the warrant, they found Bell hiding on the roof outside his bedroom window. Near Bell, the officers saw a plastic bag, from which a cardboard box marked "Winchester" protruded. The bag contained multiple rounds of various types, calibers, and makes of ammunition.

Bell was indicted in two separate one count indictments – one for being a felon in possession of ammunition in violation of 18 U.S.C. § 922(g) and the second for Hobbs Act robbery, in violation of 18 U.S.C. § 1951(a). He pled guilty to both indictments.

At sentencing, the District Court, over Bell's counsel's objections, imposed a two-level enhancement for physical restraint pursuant to U.S.S.G. § 2B3.1(b)(4)(B) and a four-level enhancement for use of a dangerous weapon, pursuant to U.S.S.G. § 2B3.1(b)(2)(D).[1] After a three-level reduction for

---

[1] Counsel also sought to have the offenses grouped in order to eliminate an additional one level enhancement. In addition, counsel sought a reduction for Bell's minor role in the offense. The District Court rejected both of these arguments. Bell does not challenge either of those decisions on appeal.

acceptance of responsibility, the District Court concluded that Bell had an offense level of 24 and a criminal history category of IV, resulting in a sentencing range of 77 to 96 months. After considering the § 3553 factors, the Court imposed a sentence of 86 months of incarceration, followed by three years of supervised release. This timely appeal followed.

## II.     Jurisdiction and Standard of Review

The District Court had jurisdiction pursuant to 18 U.S.C. § 3231. This Court has jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a).

The parties disagree as to the appropriate standard of review to use in this case. Citing no cases, Bell asserts that we should apply de novo review to his challenges to the application of the sentencing enhancements. Relying on *United States v. Richards*, 674 F.3d 215 (3d Cir. 2012), the government posits that we should review for clear error. This misconstrues our holding in *Richards*.

As we stated in *United States v. Grier*, 475 F.3d 556, 570 (3d Cir. 2007) (en banc), "this Court will continue to review factual findings relevant to the Guidelines for clear error and to exercise plenary review over a district court's interpretation of the Guidelines." We did just that in *Richards*; we were not required to interpret the Guidelines because the appellant did "not quarrel with the District Court's articulation of what it means to be a government official in a high-level decision-making or sensitive position, for the District Court used the definition of the enhancement exactly as it is recited in the Guidelines." *Richards*, 674 F.3d at 218. Instead, the appellant "disagree[d] with the District Court's conclusion that the facts regarding his employment fit within the Guidelines

5

definition of a government official in a high-level decision-making or sensitive position." *Id.* We, therefore, applied clear error review to the District Court's factual findings.

Despite the government's assertion that we are currently faced with a situation similar to that in *Richards*, we are not. Bell has not contested the facts of his offense. Instead, he challenges the District Court's interpretation and application of two provisions of the Guidelines.[2] We will review the District

---

[2] In concluding that we should review the District Court's decision for clear error, our dissenting colleague focuses on the factual nature of the application of the Guideline, but fails to acknowledge that we have not, prior to today's decision, provided a comprehensive interpretation of the physical restraint enhancement that a district court could then apply. The fatal flaw in the dissent's interpretation of *Buford v. United States*, 532 U.S. 59 (2001), emanates from a lack of appreciation for the distinction the Supreme Court is drawing. Here, as recognized in *Buford,* we are considering "a generally recurring, purely legal matter, such as interpreting a set of legal words, say, those of an individual guideline, in order to determine their basic intent." *Id.* at 65. We are not addressing an issue that "is bounded by[ ] case-specific detailed factual circumstances [where] the fact-bound nature of the decision limits the value of appellate court precedent, which may provide only minimal help when other courts consider other procedural circumstances, other state systems, and other crimes." *Id.* at 65-66. Just last year, we, as an en banc court, applied these principles when we exercised plenary review over the interpretation of a specific guideline. *United States v. Douglas*, 885 F.3d 124, 129 (3d Cir. 2018) (en banc). We are now interpreting the meaning of sections

6

Court's determinations de novo. *See United States v. Paul*, 904 F.3d 200, 202 (2d Cir. 2018) ("[T]he issue on this appeal is not the factual question of what happened to the store employee; it is the legal question whether the physical restraint enhancement applies to the undisputed facts . . . ."); *United States v. Anglin*, 169 F.3d 154, 163 (2d Cir. 1999) ("[T]he pertinent facts . . . are not disputed. . . . The question is whether the physical restraint enhancement applies to those facts, an issue that 'turns primarily on the legal interpretation of a guideline term.'" (quoting *United States v. Stroud*, 893 F.2d 504, 507 (2d Cir. 1990)).

## III.    Analysis

On appeal, Bell raises two challenges to his sentence. The first – whether he physically restrained the victim – requires us to review sections 2B3.1(b)(4)(B) and 1B1.1 of the Sentencing Guidelines in order to discern what conduct the Sentencing Commission sought to encompass in the definition of "physically restrained."  The second – whether Bell used a dangerous weapon – presents a less challenging analysis in light of our clear precedent on this issue.

### A.    Physically restrained

Consideration of the enhancement for physical restraint involves two sections of the Sentencing Guidelines.  Section 2B3.1(b)(4)(B) provides that "if any person was physically restrained to facilitate commission of the offense [of robbery] or to facilitate escape," the sentencing calculation should be

2B3.1(b)(4)(B) and 1B1.1, before applying that meaning to the present case.

7

increased by two levels. "Physically restrained" is defined in the application notes to § 1B1.1 as "mean[ing] the forcible restraint of the victim such as by being tied, bound, or locked up." U.S. Sentencing Guidelines Manual § 1B1.1 cmt. n. 1(K) (U.S. Sentencing Comm'n 2016) [hereinafter "U.S.S.G."].[3]

Looking only at the language used in the definition, it would appear clear that Bell did not physically restrain the store employee because he did not tie up, bind, or lock up the employee. However, we, along with many of our sister circuits, have held that the three examples provided in the definition of physically restrained are not an exhaustive list, but rather only examples of the types of conduct that fall within the meaning of the term. *United States v. Copenhaver*, 185 F.3d 178, 180 (3d Cir. 1999) ("Cases have generally held that 'physical restraint' is not limited to the examples listed in the guidelines."). *See, e.g.*, *United States v. Ossai*, 485 F.3d 25, 32 (1st Cir. 2007); *United States v. Drew*, 200 F.3d 871, 880 (D.C.

---

[3] At the time of Bell's sentencing in 2017, the term "physically restrained" was defined in Application Note 1(K) of the U.S. Sentencing Guidelines. As a result of revisions made to the U.S. Sentencing Guidelines in 2018, the definition of "physically restrained" now appears in Application Note 1(L). This change does not affect our case. *See Dorsey v. United States*, 567 U.S. 260, 275 (2012) ("The Sentencing Commission has . . . instructed sentencing judges to 'use the Guidelines Manual in effect on the date that the defendant is sentenced,' regardless of when the defendant committed the offense, unless doing so 'would violate the ex post facto clause.'" (quoting U.S.S.G. § 1B1.11)).

Cir. 2000); *United States v. Anglin*, 169 F.3d 154, 164 (2d Cir. 1999); *United States v. Hickman*, 151 F.3d 446, 461 (5th Cir. 1998); *United States v. Thompson*, 109 F.3d 639, 641 (9th Cir. 1997); *United States v. Stokley*, 881 F.2d 114, 116 (4th Cir. 1989).

Since our decision in *Copenhaver*, we have not had the occasion to speak precedentially on the parameters of what it means to be physically restrained, as defined in the Guidelines. *Copenhaver* involved the defendant, during the course of a robbery, forcing the victim from one room into another and then "put[ting] him in the fireplace and plac[ing] the fire screen across it." *Copenhaver*, 185 F.3d at 179 (quoting the appendix). While we discussed, in dicta, factors other circuits had considered when imposing the enhancement for physically restraining a victim, we were not required to adopt any specific test to be used in interpreting this Guideline since

> [w]e need not choose in this case between the position of [*United States v.*] *Thompson*[, 109 F.3d 639 (9th Cir. 1997),] that forcing some action at the point of a gun constitutes physical restraint under the Guideline and that in [*United States v.*] *Anglin*[, 169 F.3d 154 (2d Cir. 1999),] holding to the contrary. Here, Copenhaver did more than merely order Helwig to stand still, kneel or lie down. He not only forced him into another office but put him into the fireplace and placed the fire screen across it, thereby confining his victim in a manner comparable to the example given in *Anglin* of 'locking up' the victim.

*Id.* at182. We are now faced with a less clear situation that requires us to determine what factors to consider when determining if a defendant physically restrained a victim.

Unlike our Court, over the past twenty years, other circuits have reviewed the meaning and application of the physically restrained enhancement. Turning to those cases, we discern five broad factors that the other circuits have used to evaluate whether the enhancement should be applied and that we, after consideration, adopt here. Those factors are

    1.      Use of physical force;

    2.      Exerting control over the victim;

    3.      Providing the victim with no alternative but compliance;

    4.      Focusing on the victim for some period of time; and

    5.      Placement in a confined space.

We emphasize that courts should balance these factors in deciding whether to impose the enhancement; no single factor is necessarily dispositive.

### 1.  Use of physical force

Several circuits have commented on the relevance of the term "physical" in the definition of physically restrained. As the D.C. Circuit succinctly stated, "[t]he required restraint must, as the language plainly recites, be physical." *United States v. Drew*, 200 F.3d 871, 880 (D.C. Cir. 2000). That Court further observed that "the phrase 'being tied, bound, or locked

up' indicates that physical restraint requires the defendant either to restrain the victim through bodily contact or to confine the victim in some way." *Id.* In reaching this conclusion, the D.C. Circuit relied upon the Second Circuit's reasoning in *Anglin*. *Id.* (noting that "[t]he most pertinent definition of 'physical' is 'of the body as opposed to the mind, as, *physical exercise.*'" (quoting *Anglin*, 169 F.3d at 164)).

In *Anglin*, the Second Circuit relied on "the plain meaning of words" to support its conclusion that the physical restraint enhancement requires the use of physical force. *Anglin*, 169 F.3d at 164. Observing that "'physical' is an adjective which modifies (and hence limits) the noun 'restraint,'" the Second Circuit reasoned that "if § 2B3.1(b)(4)(B) said only that the enhancement would apply 'if any person was restrained,' the courts would become involved in mental, moral, philosophical, even theological considerations, in addition to physical ones. No, the restraint must be 'physical.'" *Id.*

The Fifth Circuit has adopted the Second Circuit's reasoning – it too requires the use of physical, rather than mental or moral, force in order to apply the enhancement. *United States v. Garcia*, 857 F.3d 708, 713 (5th Cir. 2017). There, the Fifth Circuit concluded that although "we have little doubt that at least one of the employees felt restrained when the barrel of a gun touched the back of his neck, . . . this employee and his coworkers were not subjected to the type of physical restraint that victims experience when they are tied, bound, or locked up." *Id.* (emphasis omitted).

Recently, the Seventh Circuit addressed the need "for something that tells us on which side of the line that divides psychological coercion from physical restraint a given case

11

falls." *United States v. Herman*, 930 F.3d 872, 875 (7th Cir. 2019). Specifically, that Court sought to resolve "the question whether the physical-restraint enhancement can be applied to situations in which an armed defendant simply orders his victims not to move and does not otherwise immobilize them through measures such as those outlined in the commentary to U.S.S.G. § 1B1.1." *Id.* at 874. In that context – where a defendant points a gun at a victim – the Seventh Circuit observed that

> the victim's reaction does not determine whether there is or is not physical restraint. If the defendant waves a gun around and barks out a command to stay still and the victim obeys, it makes no sense to say that the recipient of the order was physically restrained. Whatever restraint occurred came about from the way the victim decided to respond to the order. She might obey; she might ignore it; or she might attempt to flee. Her physical response to the defendant's attempt to coerce, however, is not something that logically belongs within the scope of the physical-restraint guideline.

*Id.* at 876. Ultimately, the Court "align[ed] [itself] with the circuits that have found that more than pointing a gun at someone and ordering that person not to move is necessary for the application of U.S.S.G. § 2B3.1(b)(4)(B)." *Id.* at 877.

We discern a common thread in these cases regarding the meaning of "physical" in the definition of physical restraint: the need for the restraint to be something more than a psychological restraint. We agree that we should consider the plain meaning of the word "physical" in the definition set

12

forth in § 1B1.1, and we therefore adopt the requirement that the restraint involve some physical aspect.

## 2.  Exerting control over the victim

Continuing our focus on the plain language of the Guidelines, we turn to the second word in the phrase: "restrained." *Anglin*, once again, provides us with guidance on this point.  Citing Webster's Deluxe Unabridged Dictionary, the Second Circuit examined the definition of "the verb 'restrain,' whose first definition is 'to hold back; to check; to hold from action, proceeding, or advancing, either by physical or moral force, or by any interposing obstacle.'" *Anglin*, 169 F.3d at 164 (emphasis omitted) (quoting Webster's Deluxe Unabridged Dictionary (1979) at 1544).  Similarly, the Ninth Circuit has turned to the dictionary in an effort to discern the meaning of the enhancement. *United States v. Foppe*, 993 F.2d 1444, 1452 (9th Cir. 1993) ("The dictionary defines 'restraint' as (1) the act of holding back from some activity or (2) by means of force, an act that checks free activity or otherwise controls." (citing Webster's Third New International Dictionary 1937 (1986))).  The Fourth Circuit has also recognized that the enhancement requires some form of restraint, stating "[t]he intended scope of the USSG § 2B3.1(b)(4)(B) enhancement is to punish a defendant who deprives a person of his physical movement." *United States v. Dimache*, 665 F.3d 603, 609 (4th Cir. 2011).

We agree that, in order to impose the enhancement, a defendant should be deemed to have engaged in actions that restrict a victim's freedom of movement in some manner. Requiring a restriction of a victim's freedom of movement is consistent not only with the dictionary definition of restraint, but also with the examples of "being tied, bound or locked up"

13

provided in the Guidelines. All three of those examples restrict a victim's freedom of movement. While tying and binding a victim require touching the person, it is possible to lock someone up without touching them. In addition, a defendant could direct one victim to tie up another victim, an action that would not require the defendant to touch the victim, but would clearly fall within the specific examples set forth in the Guidelines. We therefore reiterate our statement in *Copenhaver* that "[n]o actual touching is required to effect physical restraint." 185 F.3d at 182.

### 3. Providing the victim with no alternative but compliance

As we observed in *Copenhaver*, application of the enhancement for "physically restrained" is appropriate "when the defendant 'creates circumstances allowing the persons no alternative but compliance.'" *Id.* at 180 (quoting *United States v. Kirtley*, 986 F.2d 285, 286 (8th Cir. 1993)). The Second, Seventh,[4] Eighth, and Eleventh Circuits have all similarly recognized that providing a victim with no alternative but

---

[4] Earlier this year, the Seventh Circuit noted that some of its cases had extended the concept of "no alternative to compliance" from physical into psychological restraints. *Herman*, 930 F.3d at 876-77. In light of that concern, the Court noted that "[t]o the extent that those earlier cases allow for the application of the 'physical restraint' enhancement based solely on psychological coercion—including the coercion of being held at gun point—we hereby disapprove those holdings." *Id.* at 877.

14

compliance plays a role in determining whether to apply the enhancement.

For example, in *United States v. Rosario*, 7 F.3d 319 (2d Cir. 1993), the Second Circuit affirmed application of the enhancement because the defendant, "[b]y standing on his victim's throat while committing the robbery, . . . facilitated the commission of the offense in that the victim 'could do nothing about [his] situation because of the physical restraint.'" 7 F.3d at 321 (quoting *United States v. Doubet*, 969 F.2d 341, 347 (7th Cir. 1992) abrogated on other grounds by *United States v. Dunnigan*, 507 U.S. 87(1993)).

In *United States v. Victor*, the Eleventh Circuit noted that the enhancement is applicable when the defendant's conduct "ensure[s] the victims' compliance and effectively prevent[s] them from leaving." 719 F.3d 1288, 1290 (11th Cir. 2013) (quoting *United States v. Jones*, 32 F.3d 1512, 1518–19 (11th Cir. 1994)). The court in *Victor* concluded that by threatening the victim with what the victim believed was a gun and thereby preventing the victim from escaping, the defendant physically restrained her within the meaning of the enhancement. *Id.* (mentioning that the victim was "forced to comply").

In *Kirtley*, the Eighth Circuit concluded that although the defendant himself did not bind the victims, he ordered them to bind themselves at gun point and therefore, because the victims had "no alternative but to obey," the defendant physically restrained them. 986 F.2d at 286 ("a defendant physically restrains persons if the defendant creates circumstances allowing the persons no alternative but compliance."). Similarly, in *United States v. Lee*, the Eighth Circuit affirmed application of the sentencing enhancement on

the ground that the defendant physically restrained the victim by striking her with a gun, thereby "creat[ing] circumstances allowing the [woman] no alternative but compliance." 570 F.3d 979, 983 (8th Cir. 2009) (quoting *Kirtley*, 986 F.2d at 286) (alteration in original); *see also United States v. Schau*, 1 F.3d 729, 730 (8th Cir. 1993) (concluding that application of the enhancement was warranted where the defendant ordered the victims into an unlocked vault from which they could easily have freed themselves on the ground that the victims were forced to comply).

We agree that, in order to impose the enhancement for physical restraint, a defendant's actions should leave a victim with no alternative but compliance.[5] While we commented on this factor in dicta in *Copenhaver*, we now formally adopt it as a factor to consider when imposing the enhancement.

---

[5] In *Herman*, the Seventh Circuit observed that "[t]he phrase 'operation of circumstances that permit no alternative to compliance' could be understood to cover purely psychological coercion." *Herman*, 930 F.3d at 876. As we have already stated, we believe that physical, not psychological, restraint is required in order to impose the enhancement. Our inclusion of a victim having no alternative but compliance as a factor to consider in the physical restraint analysis does not erase the need for the restraint to be physical, nor does it open the door for psychological restraints to be considered.

16

## 4.  Focusing on the victim for some period of time

The Fourth and Tenth Circuits have recognized a need to consider the duration of the restraint in imposing the enhancement.  The Fourth Circuit distinguished between situations where the victims were "confined to a room for some time" or "held and threatened for a long enough period to accomplish the cash withdrawal," and the brief amount of time the defendant held his victim during the stabbing at issue in the case before it.  *United States v. Mikalajunas*, 936 F.2d 153, 156 (4th Cir. 1991).  The Court concluded that "the examples of physical restraint in the guidelines, while not all inclusive, imply that the guidelines intend an enhancement for something other than a *brief* holding as part of a stabbing."  *Id.* (emphasis added).  Similarly, the Tenth Circuit concluded that "in determining whether the physical restraint enhancement was properly applied we should examine the nature and duration of the restraint."  *United States v. Khleang*, 3 F. App'x 672, 675 (10th Cir. 2001).[6]

The consideration of duration of the physical restraint echoes the requirement for "*sustained focus* on the restrained person that lasts long enough for the robber to direct the victim into a room or order the victim to walk somewhere" identified by the Ninth Circuit.  *United States v. Parker*, 241 F.3d 1114, 1118 (9th Cir. 2001).  The Court further opined that "[i]t is therefore likely that Congress meant for something more than briefly pointing a gun at a victim and commanding her once to get down to constitute physical restraint, given that nearly all

---

[6] The Tenth Circuit allows citation to unpublished opinions as persuasive, but not precedential, authority.  10th Cir. R. 32.1.

17

armed bank robberies will presumably involve such acts." *Id.* at 1118–19; *see also United States v. Albritton*, 622 F.3d 1104, 1107–08 (9th Cir. 2010) (concluding that the sustained focus requirement was met where the defendant directed the victim around the premises and followed right behind her with a gun in his hand).

We note that the Sixth Circuit, in *United States v. Coleman*, rejected the "sustained focus" standard that was articulated by the Ninth Circuit in *Parker*. 664 F.3d 1047, 1050 (6th Cir. 2012) ("No other circuit has adopted *Parker*'s view, and our reading aligns with those circuits that read the text more broadly."). However, the Sixth Circuit noted that even if it did adopt *Parker*'s "sustained focus" requirement, the defendant's conduct would still warrant imposition of the enhancement because, by forcing the victim to go to a different place and stay there, the defendant's focus lasted long enough to satisfy *Parker's* sustained focus standard. *Id.* at 1050–51.

We agree with those courts that have identified a durational requirement in order to impose the enhancement. As the Fourth Circuit aptly noted, all of the examples of physical restraint listed in U.S.S.G. § 1B1.1 – being tied, bound, or locked up – imply more than a momentary restraint. As such, we shall include duration of the restraint as a factor in our analysis determining application of the enhancement.[7]

---

[7] Our dissenting colleague believes that "the physical restraint need only last long enough 'to facilitate the commission of the offense or facilitate escape.'" Dissent at 11 (quoting U.S.S.G. § 2B3.1(b)(4)(B)). He finds that the few seconds the employee was on the ground facilitated the commission of the robbery because "Bell was able to grab

18

### 5.  Placement in a confined space

In *Copenhaver*, we examined this concept and concluded that "[i]t is the perpetrator's act of enclosing or confining the victim in a space or with a barrier, actual or threatened, that constitutes the action meriting enhancement of the offense level."  185 F.3d at 183.  The inclusion of this factor is helpful to our jurisprudence.  We include it here to formalize its relevance in determining the appropriate application of the enhancement.

In sum, we conclude that, in order to impose the enhancement for physical restraint, a district court should determine if the defendant's actions involved the use of physical force that limited the victim's freedom of movement,

---

money out of the cash register after shoving the employee to the ground."  *Id.*  We simply cannot agree that the few seconds during which the employee was on the floor allowed Bell to commit the robbery in the same way being tied, bound, or locked up would.  The examples provided in the Guidelines imply the restraint has to last for some period of time greater than a few seconds.

If we were to use the Dissent's standard of the restraint lasting only long enough to facilitate the commission of the offense or facilitate escape, then we would be compelled to impose the enhancement based on Bell pushing the employee away during their struggle since that push was physical and it allowed Bell to escape.  We simply cannot agree that such a brief encounter is what the Guidelines contemplate.

19

with a sustained focus on the victim for some period of time which provided the victim with no alternative but compliance. No single factor is dispositive nor does any factor carry more weight than any other factor; rather, district courts should balance all of these factors. Further, as stated in Section 2B3.1(b)(4)(B), the restraint must be imposed "to facilitate commission of the offense [of robbery] or to facilitate escape."

### The Parties' Arguments

With these factors in mind, we turn to the parties' arguments.

Relying on *Anglin* and *Rosario*, Bell argues that "more than a mere threat is required to establish physical restraint." Appellant's Br. 10. He asserts, in conclusory fashion, that "pushing someone to the floor, and threatening them with what apparently is a toy gun is not inherently 'physical restraint.'" Appellant's Br. 12. Bell, in his reply brief, posits that if the enhancement is applied here, "then arguably all robberies justify the 2-level enhancement." Reply Br. 1.

On the other hand, the government engages in a thorough discussion of the cases interpreting physical restraint, concluding that "[h]olding the weapon to the victim's neck and throwing him to the floor achieved the same objective as various other forms of physical restraint – namely, it confined the victim to the floor, permitting the defendant to access the cash register and steal cash." Appellee's Br. 22. The government notes that Bell's conduct encompassed more than simply pointing a gun at a victim since "Bell used direct physical contact to put the victim on the floor and attempt to confine him to that space." Appellee's Br. 23. The government also emphasizes that Bell "did not simply brandish

20

the fake gun, but placed the gun to the victim's neck and threw him on the ground, and then struck the victim with the gun in an effort to keep the victim from intervening." *Id.* Analogizing to the fact in *Copenhaver* that the fire screen placed across the fireplace was removable, the government claims that the fact "the victim persisted in his efforts to thwart the robbery once he realized the firearm was fake is of no moment." *Id.* Rather, the important fact, in the government's view, "was the act of forcing the victim to the ground and attempting to hold him there." *Id.*

Despite the government's efforts to demonstrate Bell physically restrained his victim, we disagree. While grabbing the victim by the neck and forcing him to the floor satisfies the requirement that the force be physical, we cannot say that the victim was left with no alternative but compliance (a point the government never addresses) since the victim twice attempted to thwart the robbery.[8] Further, the physical restraint was quite

---

[8] While the Dissent observes "that the focus is 'on the action of the defendant, not on the reaction of the victim,'" Dissent at 10 (quoting *Herman*, 930 F.3d at 876), we are not focusing on the employee's reaction. Rather, we are considering the result of Bell's action of grabbing the employee's neck and shoving him to the floor. Since the employee was clearly able to move, as evidenced by his attempt to thwart the robbery, we cannot say he was restrained. Further, in commenting that "the enhancement aims to punish the <u>act</u> of physical restraint, successful or not," Dissent at 9, the Dissent misstates our precedent in *Copenhaver*. Nowhere in *Copenhaver* do we state that only an attempt at physically restraining a victim will suffice to impose the enhancement, nor do the Guidelines indicate that attempted restraint is a basis

21

limited in time. It could not have taken more than a few seconds for Bell to grab the victim's neck and shove him to the floor. Thus, there was no sustained focus on the victim. Instead, based on the victim's description of the incident, the entire interaction between him and Bell seems to have taken only seconds from start to finish. Looking at the totality of the circumstances, we cannot conclude that Bell physically restrained his victim sufficiently to invoke application of the enhancement. If we apply the enhancement here, then any crime that involves a chance encounter with a victim with any physical dimension would require application of the enhancement.

### B.     Use of a dangerous weapon

Bell argues that he "brandished," rather than "otherwise used" a dangerous weapon under Application Notes 1(C) and 1(I) to U.S.S.G. § 1B1.1, and that he therefore should not be subject to the four-level use of a dangerous weapon enhancement of U.S.S.G. § 2B3.1(b)(2)(D).

The Sentencing Guidelines define the above terms as follows:

> "Brandished" with reference to a dangerous weapon (including a firearm) means that all or part of the weapon was displayed, or the presence of the weapon was otherwise made

---

for imposing the enhancement. In *Copenhaver*, we acknowledged, based on the flimsy nature of the fireplace screen, that a barrier enclosing a victim could be "actual or threatened," 185 F.3d at 183, but we did not extend that concept to conclude the physical restraint need not succeed.

known to another person, in order to intimidate that person, regardless of whether the weapon was directly visible to that person. Accordingly, although the dangerous weapon does not have to be directly visible, the weapon must be present.

"Otherwise used" with reference to a dangerous weapon (including a firearm) means that the conduct did not amount to the discharge of a firearm but was more than brandishing, displaying, or possessing a firearm or other dangerous weapon.

U.S.S.G. § 1B1.1, cmt. 1(C) & 1(I).

We established a distinction between brandishing and otherwise using a weapon in *United States v. Johnson*, 199 F.3d 123, 127 (3d Cir. 1999) (quoting *United States v. LaFortune*, 192 F.3d 157, 161-62 (1st Cir. 1999) (alterations in original)):

[A] person may "brandish" a weapon to "advise" those concerned that he possesses the general ability to do violence, and that violence is imminently or immediately available . . . . Altering this general display of weaponry by [for instance] specifically leveling a cocked firearm at the head or body of a bank teller or customer, ordering them to move or be quiet according to one's direction, is a cessation of "brandishing" and the commencement of "otherwise used."

Bell pointed a weapon at the store employee's neck, ordered him to the ground, and then struck him with the weapon. **(P.S.R. ¶ 9.)** This behavior clearly goes beyond the parameters we set in *Johnson* for determining the limits of brandishing a weapon. 199 F.3d at 127.

Furthermore, in *United States v. Orr*, 312 F.3d 141, 145 (3d Cir. 2002), we stated that "[n]either the guidelines nor the caselaw requires infliction of the violent physical contact . . . or a verbalized threat to harm the victim in order to constitute 'otherwise used.'" We held in *Orr* that "pointing a gun at the head of the assistant manager and ordering her to empty money into a garbage bag was a 'specific threat' directed at her and was precisely the type of conduct which satisfies the 'otherwise used' requirement." *Id.* If "otherwise using" a weapon does not require even physical contact or a specific verbal threat of harm, it does not follow that actually striking someone with a weapon would not constitute use.

Bell argues that his actions do not constitute otherwise using a firearm under *Johnson* because the firearm he used was fake. This argument is inapposite. The Sentencing Guidelines allow for a four-level increase if a dangerous weapon was otherwise used. U.S.S.G. § 2B3.1(b)(2)(D). The Guidelines then define an object as a dangerous weapon if it is

> (i) an instrument capable of inflicting death or serious bodily injury; or (ii) an object that is not an instrument capable of inflicting death or serious bodily injury but (I) closely resembles such an instrument; or (II) the defendant used the object in a manner that created the impression that the object was such an instrument (e.g.[,] a

24

> defendant wrapped a hand in a towel during a
> bank robbery to create the appearance of a gun).

U.S.S.G. § 1B1.1 cmt. n.1(D). In *Orr*, we held that this definition applies to § 2B3.1(b)(2)(D): "Application Note 1(d) of § 1B1.1 clearly instructs that objects that appear to be dangerous weapons shall be considered dangerous weapons for purposes of § 2B3.1." 312 F.3d at 144.

Bell carried a toy gun, which he pointed at the victim's neck. Bell then forced the employee to the floor and ultimately struck him with the weapon. The victim did not realize that the firearm was fake until after he was struck with it. These factors indicate that Bell's actions meet our standards for otherwise using a dangerous weapon.

## IV.    Conclusion

In sum, we will affirm the District Court's imposition of the enhancement for otherwise using a dangerous weapon, reverse the imposition of the enhancement for physically restraining the victim, and remand for resentencing, consistent with this opinion.

United States v. Bell
No. 17-3792

CHAGARES, Circuit Judge, concurring in part and dissenting in part.

I write separately because I believe that the proper standard of review regarding application of the two United States Sentencing Guidelines ("U.S.S.G." or the "Guidelines") enhancements at issue is clear error, not de novo, as my learned colleagues hold. Further, although I ultimately agree with the majority regarding the application of the enhancement for use of a dangerous weapon, U.S.S.G. § 2B3.1(b)(2)(D), I disagree with its disposition of Bell's appeal on the physical restraint enhancement, U.S.S.G. § 2B3.1(b)(4)(B).

I.

In United States v. Grier, 475 F.3d 556 (3d Cir. 2007), our en banc Court held that we "review factual findings relevant to the Guidelines for clear error and . . . exercise plenary review over a district court's interpretation of the Guidelines." Id. at 570. But Bell does not challenge the sentencing court's factual findings or its interpretation of the Guidelines. He challenges instead its determination that two of the Guidelines enhancements apply to his case. And Grier did not provide the standard pertinent to reviewing the application of an enhancement.

Bell contends that de novo review is appropriate, while the Government contends that we should review for clear error, citing our decision in United States v. Richards, 674 F.3d 215 (3d Cir. 2012). My colleagues quickly distinguish Richards,

the holding of which they believe the Government has misconstrued.  I disagree with the majority's conclusion.

Before delving into a discussion of <u>Richards</u>, I address two notable authorities cited in that opinion.  First, we cited 18 U.S.C. § 3742(e), which sets forth principles to be applied by courts of appeals in reviewing sentences.  <u>Richards</u>, 674 F.3d at 219 n.2.  The statute provides that courts of appeals "shall give due deference to the district court's application of the guidelines to the facts."  § 3742(e).

Second, we cited the Supreme Court's unanimous decision in <u>Buford v. United States</u>, 532 U.S. 59 (2001), which in turn, relied upon § 3742(e).  <u>Richards</u>, 674 F.3d at 219–20 & n.2.  That case involved review of whether Buford's prior convictions were "related" under the Guidelines and whether the Court of Appeals for the Seventh Circuit erred in reviewing a district court's sentence under a deferential clear error standard of review.  <u>Buford</u>, 532 U.S. at 60–61; <u>see also</u> <u>United States v. Buford</u>, 201 F.3d 937, 942 (7th Cir. 2000), <u>aff'd</u>, 532 U.S. 59 (2001).  Acknowledging the command of § 3742(e), the Supreme Court framed the question as "what kind of 'deference' is 'due'" to district courts applying the Guidelines to facts.  532 U.S. at 63.  The Court noted that the answer to that question "depends on the nature of the question presented."  <u>Id.</u> (quoting <u>Koon v. United States</u>, 518 U.S. 81, 98 (1996)).  It distinguished between "a generally recurring, purely legal matter, such as interpreting a set of legal words . . . readily resolved by reference to general legal principles and standards alone," and a question that "grows out of, and is bounded by, case-specific detailed factual circumstances."  <u>Id.</u> at 65.  The Court held that the latter type of question — one of a "fact-bound nature" — required deference when reviewing

2

the district court's application of a Guideline.  Id. at 66.
Deferential review of a fact-bound application by a district
court was appropriate, the Court reasoned, because of the
"institutional advantages enjoyed by the district court," id. at
64, including "the comparatively greater expertise of the
District Court," id. at 66, resulting from the volume of
sentencings trial judges conduct.  In addition, the Court
reasoned that "the fact-bound nature of the decision limits the
value of appellate court precedent, which may provide only
minimal help when other courts consider other . . .
circumstances."  Id. at 65–66.  The Court concluded that the
question before it was fact bound and that "the appellate court
was right to review this trial court decision deferentially rather
than de novo."  Id. at 64, 66.[1]

In Richards, we were asked to review an application of
U.S.S.G. § 2C1.2(b)(3), an enhancement that increases an
offense level when the crime involves a "public official in a
high-level decision-making or sensitive position."  674 F.3d at
217 (quoting U.S.S.G. § 2C1.2(b)(3)).  The defendant argued
that application of the enhancement necessarily "involve[d] an
interpretation of the Sentencing Guidelines," warranting de

---

[1] Even before the Supreme Court's decision in Buford,
we held in United States v. Ortiz that where application of a
Guideline was "essentially factual," we would employ a clearly
erroneous standard of review.  878 F.2d 125, 126 (3d Cir.
1989) (quoting United States v. McConney, 728 F.2d 1195,
1202 (9th Cir. 1984) (en banc)).  In Ortiz, "we conclude[d] that
the question of a defendant's aggravating role . . . is 'essentially
factual'" and determined that we would "reverse the district
court in th[at] case only if its conclusion [were] clearly
erroneous."  Id. at 127.

novo review. Id. at 218. We determined instead — relying upon Buford — that clear error review was appropriate.[2] We reached this determination because Richards was not challenging "the District Court's articulation of what it means to be a government official in a high-level decision-making or sensitive position, for the District Court used the definition of the enhancement exactly as it is recited in the Guidelines," but rather its "conclusion that the facts . . . fit within the Guidelines definition of a government official in a high-level decision-making or sensitive position." Id. We then held that when "sentencing adjustments require a district court to closely examine a set of facts and determine whether they fit within the definition of the adjustment before deciding whether to apply the adjustment, we should review that decision for clear error only." Id. at 222. For instance, we concluded, "where, as here, the particular Guideline in question sets forth a predominantly fact-driven test," we review for clear error. Id. at 223; see also United States v. Huynh, 884 F.3d 160, 165 (3d Cir. 2018) (holding that "[w]e . . . review the District Court's application of the relocation enhancement for clear error" because the question "is, at bottom, 'a strictly factual test, such that once the test is stated[,] no legal reasoning is necessary to the resolution of the issue'" (alteration in original) (quoting Richards, 674 F.3d at 221)).

Here, we too "consider a district court's application of the Guidelines to a specific set of facts." Richards, 674 F.3d at

---

[2] We recognized in Richards that although the Supreme Court excised certain parts of § 3742(e) in United States v. Booker, 543 U.S. 220 (2005), that statute "still call[s] for 'due deference' to be given to a district court's application of the Guidelines to the facts." Richards, 674 F.3d at 219 n.2.

4

219.  Because application of either enhancement here "require[d] [the] district court to closely examine" the facts of Bell's case "and determine whether they fit within the definition[s] of the adjustment[s] before deciding . . . to apply the[m], we should review th[ose] decision[s] for clear error only."  Id. at 222.  Indeed, the majority's recitation of a "fact-driven test" to determine whether the physical restraint enhancement applies compels clear error review.  Id. at 223.

My colleagues distinguish Richards by noting that "Bell has not contested the facts of his offense" and that Bell is only challenging the "interpretation and application of two provisions of the Guidelines."  Maj. Op. 6.  But Richards did not contest the facts of his offense, either — instead, he, like Bell, challenged the district court's application or fit of the enhancement to those undisputed facts.  Richards, 674 F.3d at 218; see also United States v. Fish, 731 F.3d 277, 279 (3d Cir. 2013) (determining that clear error was the proper standard to review application of U.S.S.G. § 2S1.1(b)(3) where "there [wa]s no dispute over the factual determinations but the issue is whether the agreed-upon set of facts fit within the enhancement requirements").  Further, Buford also argued that no deference was appropriate where the district court was simply "applying a Sentencing Guidelines term to undisputed facts."  Buford, 532 U.S. at 64.  The Supreme Court did not credit this argument and held, as described above, that it was the "fact-bound nature" of the district court's application of a Guideline that compelled deferential review of the application.  Id. at 66.  As a result, whether the facts are disputed or undisputed is immaterial to the type of deference we give to a district court's application of a Guidelines enhancement.

5

I respectfully dissent because I believe that the District Court's application of the enhancements in this case should be reviewed under the clearly erroneous standard.

## II.

Applying the clear error standard of review that I believe is appropriate in this matter, I now consider Bell's challenges to the application of sections 2B3.1(b)(2)(D) and 2B3.1(b)(4)(B) of the Guidelines.

## A.

The majority notes that this Court has not considered the parameters of "physical restraint" in a precedential opinion since United States v. Copenhaver, 185 F.3d 178 (3d Cir. 1999). In that case, we declined "to adopt any specific test to be used in interpreting" U.S.S.G. § 2B3.1(b)(4)(B), as the facts of that case supported application of the enhancement in any event. Maj. Op. 9.

I do not necessarily fault my colleagues for desiring to set forth a clearer standard regarding the application of U.S.S.G. § 2B3.1(b)(4)(B). But I believe that this case can be decided using the plain text of the enhancement and our current jurisprudence. Using those sources, I believe that the District Court was correct to apply the physical restraint enhancement. And I reach that same conclusion even after considering the factors laid out by the majority.

1.

The language of U.S.S.G. § 2B3.1(b)(4)(B) and Copenhaver dictate that application of the enhancement in this matter was proper. As noted by the majority, Bell's offense level may be increased by two levels pursuant to the enhancement "if any person was physically restrained to facilitate commission of the offense or to facilitate escape." U.S.S.G. § 2B3.1(b)(4)(B). "Physical[] restrain[t]" as defined by the Guidelines, is "the forcible restraint of the victim such as by being tied, bound, or locked up." U.S.S.G. § 1B1.1 cmt. n.1(K).[3] In Copenhaver, we held that application of the enhancement was warranted where a robber forced a victim from one room to another, eventually having him get into a fireplace and placing a screen across it. 185 F.3d at 182. The robber also repeatedly threatened the victim throughout the encounter and earlier displayed what appeared to be a gun. Id. After considering the conclusions that our sister appellate courts reached in other cases challenging the enhancement's application, we concluded that the defendant's actions warranted application of U.S.S.G. § 2B3.1(b)(4)(B). Id. at 181–82. We explained that the defendant's action of forcing the victim into a fireplace in another room behind a screen confined the victim, similar to "lock[ing] [him] up," id. at 182 (first alteration in original); see also U.S.S.G. § 1B1.1 cmt. n.1(K), and that his placement of the screen "sign[aled] his intention to impede" the victim's interference with the crime, Copenhaver, 185 F.3d at 182. We also explained that the defendant's display of a weapon, repeated threats, and placement of the screen left the victim no alternative but to

---

[3] Like the majority, I cite to the Guidelines as they existed when Bell was sentenced.

7

comply with the demand that he get into the fireplace and remain there. Id.

The same is true here. When Bell grabbed the employee by the neck, pointed a gun at his neck, and then shoved him to the floor before Bell began extracting money from the cash register, he used physical force to facilitate the commission of his crime and attempted to confine the employee to the floor. When the employee tried to stop Bell, Bell struck him with the weapon. Bell's use of force against the employee, like the screen in Copenhaver, both served as an attempt to keep the employee confined to the floor and signaled his intention to impede the employee's interference with the crime.

That the employee was not deterred by Bell's actions does not, in my view, prove that Bell's conduct lacked Copenhaver's "no alternative but compliance" factor. We should not permit "a victim's boldness [to] lessen[] a criminal's culpability." United States v. Smith, 767 F.3d 187, 191 (3d Cir. 2014); see also id. at 188, 190 (upholding application of the abduction enhancement, U.S.S.G. § 2B3.1(b)(4)(A), even though the victim "disregarded some of [the defendant's] commands and ultimately escaped"). Indeed, we suggested as much in Copenhaver, explaining that the screen's feebleness "d[id] not negate physical restraint" because "[i]t is the perpetrator's act of enclosing or confining the victim in a space or with a barrier, actual or threatened, that constitutes the action meriting enhancement of the offense level." 185 F.3d at 182–83 (emphases added).

At bottom, my reading of the enhancement, our precedent, and the record leads me to conclude that the District Court did not clearly err in enhancing Bell's sentence by two

8

levels pursuant to U.S.S.G. § 2B3.1(b)(4)(B).  To that end, I would affirm the District Court's imposition of the enhancement.

2.

I express no opinion on the appropriateness of the factors adopted by the majority to be balanced by sentencing courts when determining whether the physical restraint enhancement should be applied.  But assuming that these factors set forth an appropriate standard by which to assess potential applications of U.S.S.G. § 2B3.1(b)(4)(B), I nonetheless would conclude that application of the enhancement was warranted in this case.

Applying its new test, the majority concludes that Bell's conduct does not amount to physical restraint.  It determines that although Bell used physical force against the employee when Bell grabbed his neck and shoved him to the floor (factor (1)), the employee was not "left with no alternative but compliance . . . since [he] twice attempted to thwart the robbery" (factor (3)), and "there was no sustained focus on the victim" (factor (4)), as "the entire interaction . . . seems to have taken only seconds from start to finish."  Maj. Op. 21–22.

I must disagree with the majority's conclusions as to the third and fourth factors, as well as its balancing of all of the factors.  As explained above, the employee's attempts to interfere with the robbery should not preclude satisfaction of the no-alternative-but-compliance factor here because the enhancement aims to punish the act of physical restraint, successful or not.  See Copenhaver, 185 F.3d at 182–83 ("It is the perpetrator's act of enclosing or confining the victim . . . ,

9

actual or threatened, that constitutes the action meriting enhancement of the offense level."); see also United States v. Herman, 930 F.3d 872, 876 (7th Cir. 2019) (noting, in a case holding that psychological coercion is insufficient to warrant application of U.S.S.G. § 2B3.1(b)(4)(B), the "more general point" relayed by "the cases that have found physical restraint" is that the focus is "on the action of the defendant, not on the reaction of the victim," and explaining that "the victim's reaction does not determine whether there is or is not physical restraint").

I also disagree with the majority's conclusion regarding its fourth factor, assessing the duration of the restraint. Although I refrain from commenting on the propriety of adopting this factor — that is, whether the majority was correct to adopt the narrow view of the Court of Appeals for the Ninth Circuit in the circuit split on this issue — I believe that Bell's conduct also satisfies this factor. The majority concludes that it does not in part because "[i]t could not have taken more than a few seconds for Bell to grab the victim's neck and shove him to the floor," and therefore, "there was no sustained focus on the victim." Maj. Op. 22.[4] But that was not the extent of Bell's conduct — he also struck the employee when the employee attempted to interfere with the robbery. In any event, it likely also took only moments for the robber in United States v. Coleman, 664 F.3d 1047, 1048, 1050 (6th Cir. 2012), to order a bank employee at gunpoint to exit his "office adjacent to the bank lobby . . . and sit on the floor in the lobby," yet the Court

---

[4] The record does not reveal how long the restraint lasted. Bell claims it was "brief," Reply Br. 3, or "very brief," Bell Br. 8, while the Government suggests that "the restraint may have been short-lived," Gov't Br. 23.

10

of Appeals for the Sixth Circuit concluded that such conduct would satisfy the "sustained focus" standard adopted by the Court of Appeals for the Ninth Circuit.[5]  In my view, the physical restraint need only last long enough "to facilitate commission of the offense or to facilitate escape."  U.S.S.G. § 2B3.1(b)(4)(B).  Here, it did the former, as Bell was able to grab money out of the cash register after shoving the employee to the ground.

On balance, the factors in the majority's newly proffered test weigh in favor of finding that Bell physically restrained the employee.  As the majority recognizes, he used physical force against the employee.  Next, Bell in fact restrained the employee — or "restrict[ed] [his] freedom of movement in some manner," Maj. Op. 13 — when Bell grabbed him, pointed a gun at him, shoved him to the floor, and then hit him when he tried to interfere with the robbery.  See United States v. Ossai, 485 F.3d 25, 32 (1st Cir. 2007) (concluding that a "large and powerful" robber's placement of a gun and "his hand on the victim's neck and shoulder to force him into a kneeling position, especially while stating that 'I do not want to hurt you,' unquestionably qualifies as a 'physical

---

[5] It appears to me that the Court of Appeals for the Ninth Circuit's "sustained focus" standard might apply only when the conduct relied upon to prove physical restraint consists solely of issuing orders to victims at gunpoint rather than some sort of bodily contact with the victim, as here.  See, e.g., United States v. Parker, 241 F.3d 1114, 1118–19 (9th Cir. 2001) (concluding, with "little doubt," that "grabb[ing] a teller by her hair and pull[ing] her up from the floor . . . constitute[s] physical restraint," but ordering a teller at gunpoint to get on the floor does not, absent a sustained focus on the teller).

restraint' under any reasonable connotation of that term," as it "diminish[ed] [his] freedom of movement and ability to resist or escape"). Finally, the employee was restrained for enough time that Bell was able to steal $1,000 from the cash register. That this duration of time is adequate under the majority's test would appear to be supported by a decision relied upon and quoted by the majority distinguishing a case where the victim was, as here, "held and threatened for a long enough period to accomplish the cash withdrawal." Maj. Op. 17 (quoting United States v. Mikalajunas, 936 F.2d 153, 156 (4th Cir. 1991)). Based on this record, and reviewing this appeal using the majority's new framework, I cannot conclude that the District Court clearly erred when it applied the physical restraint enhancement to Bell's conduct and would therefore affirm application of that enhancement.[6]

B.

I concur with the majority's disposition of Bell's appeal concerning application of the otherwise-use-of-a-dangerous-weapon enhancement. I only note that I would reach this same conclusion on a clear error review of the District Court's sentence, as the record reveals that Bell was armed with a toy gun, which appeared to the employee to be a real gun until a part of it broke off, and that Bell pointed the gun at the employee's neck, shoved him to the ground, and later struck him with the gun.[7]

---

[6] I would reach this same conclusion on a de novo review of the record.

[7] If the standard by which we review this issue were, indeed, de novo, I would concur with the majority's conclusion

## III.

For the above reasons, I respectfully concur in part and dissent in part.

---

(and its reasoning therefore) that U.S.S.G. § 2B3.1(b)(2)(D) applies to Bell's conduct.