**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 23-1341
_____

UNITED STATES OF AMERICA

v.

MARNELL JOHNSON,
                              Appellant
_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 3:21-cr-00424-001)
District Judge:  Honorable Michael A. Shipp

_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
January 29, 2024
_____

Before:  CHAGARES, <u>Chief</u> <u>Judge</u>, RESTREPO and FREEMAN, <u>Circuit</u> <u>Judges</u>

(Filed: May 9, 2024)
_____

OPINION*
_____

---

\* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not
constitute binding precedent.

CHAGARES, Chief Judge.

A jury found Marnell Johnson guilty of (1) possession with intent to distribute a controlled substance; (2) possession of a firearm by a felon; and (3) possession of a firearm in furtherance of a drug trafficking crime. On appeal, Johnson argues that there was insufficient evidence to support his convictions for the two firearm convictions and that the District Court erred by imposing a two-level enhancement at sentencing. For the reasons explained below, we will affirm the judgment of the District Court.

I.

We write primarily for the parties and recite only the facts essential to our decision. Law enforcement officers observed Johnson coming and going from an apartment in Long Branch, New Jersey approximately six times between mid-February and April 2020. On four of those occasions, law enforcement observed Johnson in the vicinity of the apartment complex selling heroin to a confidential source ("CS"), who was acting at the direction and under the supervision of the United States Drug Enforcement Administration ("DEA"). These sales occurred on February 13, February 20, March 6, and April 6.

DEA agents arrested Johnson shortly after he left the apartment on April 8, 2020. The agents then executed a search warrant of the one-bedroom apartment. Before they entered the apartment, the agents saw, through a screen door, a woman who they later identified as Tia Jones. Jones was sitting on the couch in the living room, packaging heroin on a coffee table.

When the agents went into the bedroom, they saw a bench in front of a small table. On top of this table was heroin — both packaged and loose — as well as drug packaging paraphernalia. In the drawer of that table, they found a digital scale and a loaded handgun. The officers also discovered men's clothing and two pairs of men's shoes near the bedroom table.

Johnson was charged with (1) possession with intent to distribute a controlled substance, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C) ("Count One" or the "drug count"); (2) possession of a firearm by a felon, in violation of 18 U.S.C. § 922(g)(1) ("Count Two" or the "felon-in-possession charge"); and (3) possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A)(i) ("Count Three" or the "§ 924(c) charge") (collectively with Count Two, the "firearm counts"). All three counts concerned the heroin and loaded weapon found in the apartment on April 8, 2020. Johnson was not charged with the four prior sales of heroin to the CS on February 13, February 20, March 6, or April 6, 2020.

Before trial, the Government moved to admit evidence of Johnson's four prior heroin sales pursuant to Federal Rule of Evidence 404(b). The Government asserted that this evidence was relevant for non-propensity purposes: to establish Johnson's knowledge and possession of the drugs found in the apartment on April 8, 2020, to establish his intent to distribute heroin, and to establish any absence of mistake or accident regarding his presence in the apartment. The District Court agreed and admitted the evidence of the four prior heroin sales to support the drug count (Count One), with an

accompanying limiting instruction. But the District Court did not allow the Government to use this evidence to support the firearm counts (Counts Two and Three).

The parties agreed to bifurcate the trial to prevent Johnson from suffering any prejudice from evidence of a prior felony, which is a required element of Count Two, the felon-in-possession charge. Accordingly, the jury considered Counts One and Three in the first phase of trial before it considered Count Two in the second phase. At the close of the Government's case-in-chief in the first phase of trial, Johnson moved for a judgment of acquittal on Count Three, the § 924(c) charge, pursuant to Federal Rule of Criminal Procedure 29(a). The District Court reserved its decision, and it subsequently denied the motion. On the fourth day of trial, the jury convicted Johnson of Counts One and Three.

The jury then proceeded to the second phase of the trial concerning Count Two, the felon-in-possession charge. The jury heard the parties' stipulation that Johnson had a prior felony conviction, along with the jury instructions and counsel's closing statements. After deliberating, the jury convicted Johnson of Count Two. Johnson moved for a judgment of acquittal on Count Two and renewed his motion for a judgment of acquittal on Count Three, both pursuant to Federal Rule of Criminal Procedure 29(c). Johnson also moved in the alternative for a new trial on the firearm counts (Counts Two and Three), pursuant to Federal Rule of Criminal Procedure 33. The District Court denied Johnson's motions.

The District Court sentenced Johnson to 138 months of imprisonment and three years of supervised release. At sentencing, the District Court applied a two-level

4

enhancement under section 2D1.1(b)(12) of the United States Sentencing Guidelines (the "Guidelines"), on the basis that Johnson "maintained a premises for the purpose of manufacturing or distributing a controlled substance." U.S.S.G. § 2D1.1(b)(12). Johnson timely appealed.

## II.[1]

Johnson first argues that the evidence was insufficient to support his convictions for the two firearm offenses. On appeal from the denial of a motion for judgment of acquittal, we exercise plenary review and will sustain the verdict if, viewing the evidence in the light most favorable to the Government, "any rational trier of fact could have found proof of guilt beyond a reasonable doubt based on the available evidence." United States v. Smith, 294 F.3d 473, 476 (3d Cir. 2002) (quoting United States v. Wolfe, 245 F.3d 257, 262 (3d Cir. 2001)). "Only when the record contains no evidence, regardless of how it is weighted, from which the jury could find guilt beyond a reasonable doubt, may an appellate court overturn the verdict." United States v. McNeill, 887 F.2d 448, 450 (3d Cir. 1989) (quoting Brandom v. United States, 431 F.2d 1391, 1400 (7th Cir. 1970)). We "must be ever vigilant . . . not to usurp the role of the jury by weighing credibility and assigning weight to the evidence, or by substituting [our] judgment for that of the jury." United States v. Brodie, 403 F.3d 123, 133 (3d Cir. 2005).

Johnson was convicted under 18 U.S.C. § 922(g)(1), which makes it a crime for anyone convicted of a crime punishable by more than one year of imprisonment to

---

[1] The District Court had jurisdiction under 18 U.S.C. § 3231. We have jurisdiction under 18 U.S.C. § 3742 and 28 U.S.C. § 1291.

possess a firearm, and 18 U.S.C. § 924(c), which makes it a crime to possess a firearm in furtherance of a drug trafficking crime. See 18 U.S.C. §§ 922(g)(1), 924(c). Both firearm counts share an element that the Government must prove beyond a reasonable doubt: that the defendant knowingly possessed the firearm. See United States v. Dodd, 225 F.3d 340, 344 (3d Cir. 2000) (noting that to obtain a conviction under § 922(g)(1), the Government must prove that the defendant knew that he possessed a firearm), abrogated on other grounds by Rehaif v. United States, 139 S. Ct. 2191, 2194 (2019); United States v. Bailey, 840 F.3d 99, 112 (3d Cir. 2016) (same for § 924(c)). Johnson contends that the Government failed to establish that he knowingly possessed the firearm here. According to Johnson, the evidence shows that he simply happened to be present near where the firearm was found in someone else's apartment. We disagree.

Because Johnson was not found in actual possession of a firearm, the Government must prove that he had constructive possession of one. See United States v. Caldwell, 760 F.3d 267, 278 (3d Cir. 2014). Johnson was in constructive possession of the firearm if he "knowingly ha[d] both the power and the intention at a given time to exercise dominion or control over [it], either directly or through another person or persons." United States v. Cunningham, 517 F.3d 175, 178 (3d Cir. 2008) (quoting United States v. Iafelice, 978 F.2d 92, 96 (3d Cir. 1992)). "Constructive possession may be proved by either direct or circumstantial evidence, and it need not be exclusive to a single person." United States v. Walker, 657 F.3d 160, 172 (3d Cir. 2011) (citing United States v. Iglesias, 535 F.3d 150, 156 (3d Cir. 2008)). "Dominion and control are not established, however, by 'mere proximity to the [contraband], or mere presence on the property where

6

it is located or mere association with the person who does control the [contraband] or the property.'" United States v. Jenkins, 90 F.3d 814, 818 (3d Cir. 1996) (quoting United States v. Brown, 3 F.3d 673, 680 (3d Cir. 1993)).

Here, the Government proved far more than Johnson's mere proximity to the apartment where the firearm was found. As an initial matter, the Government presented evidence establishing that Johnson regularly accessed the apartment during two months of periodic surveillance leading up to April 8, 2020, the date of the arrest and search. The Government also presented evidence that would permit a jury to reasonably infer that Johnson and Jones had been packaging heroin for distribution in the apartment on the morning of April 8. When the officers executed the search warrant, they saw Jones sitting on the couch in the living room, actively packaging heroin on the coffee table in front of her. The officers then entered the bedroom, where they discovered a small table at the foot of the bed with a bench in front of it, which appeared to be a second heroin packaging station. The officers recovered a large quantity of drugs and drug paraphernalia from the table in the bedroom, and the loaded firearm and digital scale were recovered from inside the drawer. The officers also found men's clothing and shoes near the bedroom table.

Based on this evidence, the jury could have easily drawn the inference that on the morning of April 8, before Johnson left the apartment and was arrested, he was packaging heroin while sitting on the bench in front of the small table in the bedroom. While sitting on this bench, Johnson would have been within arm's reach of the loaded firearm located in the table drawer. Accordingly, the jury could infer that Johnson had control over the

7

drugs and drug paraphernalia on top of the table, as well as the items inside the table drawer, including the firearm. See United States v. Walker, 993 F.2d 196, 200 (9th Cir. 1993) ("Based on the close proximity of both the gun and ammunition to drugs, and the gun's location near the couch where [the defendant] had been lying, a rational jury could have found beyond a reasonable doubt that [the defendant] was prepared to use the gun to defend his possession of the drugs in the apartment."). We therefore conclude that sufficient evidence was presented at trial for the jury to conclude that Johnson knowingly possessed a firearm.

We are unpersuaded by Johnson's arguments to the contrary. For example, Johnson points out that his name was not on the apartment lease, no mail was addressed to him, and there was no DNA or fingerprints linking him to the firearm. But the Government was not required to introduce any of this evidence. Instead, the Government offered other circumstantial evidence to support its constructive possession claim and demonstrate that Johnson had dominion and control over the firearm. See United States v. Roach, 582 F.3d 1192, 1205–06 (10th Cir. 2009) (holding that the defendant was in constructive possession of a firearm and drugs found at his girlfriend's residence where, among other things, men's clothing was found on the floor of the bedroom closet, his girlfriend was unaware of the contraband, and no other adults had access to the apartment).[2] As a result, we will affirm the judgment as it pertains to Johnson's convictions.

---

[2] Johnson also argues that the District Court erred in denying his post-trial Rule 29 motion because the District Court improperly considered the Rule 404(b) evidence of

III.

Johnson also argues that the District Court erred in applying a two-level sentencing enhancement. We review legal issues regarding the Guidelines <u>de novo</u> and findings of fact for clear error. <u>United States v. Bell</u>, 947 F.3d 49, 54 (3d Cir. 2020).

The pertinent Sentencing Guideline provides that if a defendant "maintained a premises for the purpose of manufacturing or distributing a controlled substance," a two-level enhancement applies. U.S.S.G. § 2D1.1(b)(12). For the enhancement to apply, the Government must prove by a preponderance of the evidence that the defendant "(1) knowingly (2) opened or maintained any place (3) for the purpose of manufacturing or distributing a controlled substance." <u>United States v. Carter</u>, 834 F.3d 259, 261 (3d Cir. 2016) (cleaned up) (quoting <u>United States v. Johnson</u>, 737 F.3d 444, 447 (6th Cir. 2013)). The Guidelines commentary instructs that, in determining whether the defendant "maintained" the property, we should consider, among other things, (a) whether the defendant "held a possessory interest" in the premises, such as owning or renting the premises, and (b) "the extent to which the defendant controlled access to, or activities at, the premises." U.S.S.G. § 2D1.1 cmt. n.17.

---

Johnson's four prior drug sales, but this argument lacks merit. The District Court's opinion explicitly states that the four drug sales were "introduced at trial as prior bad acts for a limited purpose with respect to Count One only." Appendix ("App.") 12 n.5. Moreover, the District Court's analysis of the evidence supporting the firearm counts does not even mention the four drug sales. The District Court's analysis only refers to the testimony of the officers who observed Johnson regularly accessing the apartment over a two-month period, and this surveillance evidence does not fall within the scope of the District Court's Rule 404(b) ruling. The District Court's 404(b) ruling concerned the four drug sales themselves, rather than Johnson's routine, everyday actions during the period of surveillance.

The Guidelines commentary provides that "[m]anufacturing or distributing a controlled substance need not be the sole purpose for which the premises was maintained, but [it] must be one of the defendant's primary or principal uses for the premises, rather than one of the defendant's incidental or collateral uses for the premises." Id. When making this determination, courts "should consider how frequently the premises was used by the defendant for manufacturing or distributing a controlled substance and how frequently the premises was used by the defendant for lawful purposes." Id.

Here, the record contains ample facts to support the District Court's conclusion that Johnson knowingly maintained the premises for the purpose of distributing controlled substances. Johnson sold heroin to the CS on four separate occasions, within a two-month period, in the immediate vicinity of the apartment. And, as noted earlier, law enforcement officers found Jones actively packaging heroin in the living room when they executed the search warrant of the apartment. The officers recovered a large quantity of drugs and drug paraphernalia, such as several bricks of heroin (branded with a blue stamp mark that read "sicK"), thousands of smaller individual bags of heroin, empty glassine bags, a digital scale, and an ink stamp imprinted with the word "sicK." The lead investigator on the case, who had twenty-two years of experience investigating narcotics trafficking for the DEA, testified that it appeared that the apartment was being used as "a heroin mill location." App. 145. All this evidence, when viewed together, demonstrates that Johnson (along with Jones) maintained control over the apartment, and that one of the apartment's primary purposes was to serve as a location for packaging and distributing heroin. See United States v. Jones, 778 F.3d 375, 385 (1st Cir. 2015) ("A

10

defendant's purpose may be inferred from the totality of the circumstances, including such facts as the quantity of drugs discovered and the presence of drug paraphernalia or tools of the drug-trafficking trade.").

Johnson's counterarguments are unconvincing. First, Johnson asserts that the District Court erred in applying the enhancement because there was no evidence that Johnson owned or rented the apartment. But the Government need not prove that Johnson owned or rented the apartment for the enhancement to apply. "The enhancement does not require either ownership or a leasehold interest," because otherwise a drug dealer could "evade application of the enhancement by the simple expedient of maintaining his stash house under someone else's name." Id.

Second, Johnson argues that there was no evidence that Jones was Johnson's employee or that Johnson directed her to rent the apartment. However, the record contains evidence that Johnson conducted drug-related business out of the apartment on multiple occasions, and that Jones was involved. For example, Jones advised the DEA that Johnson had recently purchased heroin and fentanyl from his supplier in Newark, New Jersey, and that she assisted Johnson with the packaging process.[3] Based on this

---

[3] This information was included in a DEA report of investigation provided by the Government prior to sentencing. Although the DEA report was not presented at trial, the District Court properly considered this information when determining Johnson's sentence. In determining whether a sentencing enhancement applies, courts "may consider relevant information without regard to its admissibility under the rules of evidence applicable at trial, provided that the information has sufficient indicia of reliability to support its probable accuracy." U.S.S.G § 6A1.3(a).

11

information, the District Court could reasonably infer that Johnson was supervising and controlling the drug-related business activities taking place in the apartment.

Because the District Court correctly applied the two-level sentencing enhancement, we will affirm the judgment as it pertains to Johnson's sentence.

IV.

For the foregoing reasons, we will affirm the judgment of the District Court.

12